**MOTLEY RICE LLC**
Kimberly Barone Baden
kbarone@motleyrice.com
Mary Schiavo
mschiavo@motleyrice.com
James R. Brauchle
jbrauchle@motleyrice.com
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450

*Attorneys for Plaintiff*

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| ATEF BANDARY<br><br>Plaintiff,<br><br>v.<br><br>DELTA AIR LINES, INC., a corporation;<br><br>Defendant. | Case No. 5:17-CV-1065<br><br>**COMPLAINT FOR DAMAGES**<br><br>1.  **NEGLIGENT HIRING, TRAINING, AND SUPERVISION**<br><br>2.  **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br><br>3.  **ASSAULT**<br><br>4.  **BATTERY**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff ATEF BANDARY ("BANDARY"), through the undersigned attorneys, brings this action for damages against Defendant DELTA AIR LINES, INC. ("DELTA"), as follows:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction under 28 U.S.C. § 1331(a), included but not limited to the Convention for the Unification of Certain Rules for International Carriage by Air (hereinafter the "Montreal Convention"), which the United States and Argentina have ratified. Defendant DELTA is a signatory to the Montreal Convention by means of the International Air Carrier Transportation Association ("IATA") Intercarrier Agreement on Passenger Liability which specifically removes limitations on damages.

2.      The Court also has jurisdiction under 28 U.S.C. § 1332.  This case involves a dispute between BANDARY, a U.S. citizen with a principal and permanent residence in this District, and a corporation based in the State of Delaware, and the amount in controversy exceeds the $75,000 jurisdictional minimum of this Court.

3.      Jurisdiction and venue is proper in this District pursuant to Article 33(1) of the Montreal Convention because Plaintiffs' principal and permanent residence is in the Central District of California, BANDARY's destination was Palm Springs, California, and DELTA operates services for the carriage of passengers by air to and from Palm Springs, California.

4.      Venue is also proper pursuant to 28 U.S.C. § 1391 because a substantial portion of the events and omissions giving rise to the claims alleged herein occurred in this District. Defendant has sufficient contacts because they engage in substantial business and/or commerce in California.

5.      BANDARY is a citizen of the United States of American and a resident of California.

6.      BANDARY was a passenger on an international itinerary from Buenos Aires, Argentina, with an intended destination of Palm Springs, California.

7.      BANDARY was a passenger on board DELTA Flight 1105 on May 29, 2015, between Atlanta, Georgia, and Salt Lake City, Utah, as part of the international carriage by air.

COMPLAINT FOR DAMAGES

8.      BANDARY was prevented from traveling to his intended destination of Palm Springs, California, by Defendant DELTA.

9.      Defendant DELTA is a corporation formed and domiciled under the laws of the State of Delaware.  It is a registered business entity of the California Secretary of State, with an active status.  DELTA routinely engages in continuous and systematic business in this District.

10.     Defendant DELTA is, and at all times relevant was, a common carrier for hire in the business of soliciting and/or transporting passengers for regularly scheduled flights in and out of the Palm Springs International Airport (PSP).

11.     Defendant DELTA is, and at all times relevant was, a carrier within the meaning of the Montreal Convention, operating flights between Palm Springs, California, to Buenos Aires, Argentina, and throughout the world.

12.     Defendant DELTA entered into the contract of carriage with BANDARY  and at all material times was in control of, and responsible for, his safe transport to Palm Springs, California.

## FACTUAL BACKGROUND

13.     On or about May 29, 2015, BANDARY boarded a flight from Buenos Aires, Argentina, and traveled without incident to Atlanta, Georgia, on DELTA.

14.     On May 29, 2015, BANDARY changed planes in Atlanta Hartsfield International Airport and continued his international travel as a passenger on DELTA Flight 1105 between Atlanta, Georgia, and Salt Lake City, Utah (hereinafter "Subject Flight").

15.     BANDARY was a passenger on the Subject Flight along with his traveling companion.

16.     During the Subject Flight, BANDARY requested food and water from the flight crew, a request that was initially refused.

17.     BANDARY required something to eat – a snack would have sufficed – and water in order to take prescribed medication.

18.     Because DELTA personnel dismissed his request for a snack and water, BANDARY took his medications on an empty stomach, which caused him to have diarrhea.

COMPLAINT FOR DAMAGES

19. Because BANDARY was experiencing diarrhea on the Subject Flight, he got out of his seat on several occasions to use the lavatory. The "fasten seat belt" light was not illuminated on any of these occasions.

20. BANDARY was seated in the aft section of the aircraft, and complained to DELTA flight attendants about the in-flight service.

21. BANDARY told DELTA flight attendants that he intended to complain to DELTA's corporate office about the poor service he received.

22. While waiting to use the lavatory, BANDARY took a photograph of two flight attendants in the rear galley so he could report his experience to DELTA.

23. BANDARY and several other passengers walked through the aisles during the flight.

24. BANDARY also visited with his traveling companion, who was seated in a different part of the economy cabin.

25. As the flight was about 45 minutes away from Salt Lake City, BANDARY stood waiting to use the rear lavatory, for which he had an urgent need, occasioned by his having to take his medication without water or a snack.

26. DELTA's lead flight attendant approached BANDARY and asked him if his name is Atef Bandary. Plaintiff responded in the affirmative.

27. DELTA's lead flight attendant asked if he was unhappy with the service he received during the flight. Plaintiff responded in the affirmative.

28. DELTA's lead flight attendant told BANDARY that he must return to his seat.

29. DELTA pilots had not turned on the fasten seat belt light.

30. DELTA flight attendants did not ask BANDARY if he had a disability, medical condition or urgent need to use the lavatory.

31. DELTA flight attendants sought to punish BANDARY for complaining about his flight experience.

32. BANDARY refused to return to his seat, citing his urgent need to use the lavatory.

33.     BANDARY told DELTA's lead flight attendant that he had diarrhea and HIV, and insisted that he needed to use the lavatory and could not return to his seat until he did.

34.     DELTA's lead flight attendant called the DELTA pilots on the flight deck to report a disturbance on the Subject Flight.

35.     DELTA's lead flight attendant enlisted the help of an armed law enforcement officer who was traveling as a passenger on the Subject Flight.

36.     DELTA flight attendants restrained BANDARY using plastic restraints known as "tuff cuffs."

37.     Because DELTA flight attendants did not know how to use the "tuff cuffs," they put them on BANDARY in a manner that was too tight, causing injury and great discomfort to Plaintiff's arms, hands and wrists.

38.     As DELTA flight attendants struggled to reverse their error, BANDARY's left shoulder was temporarily dislocated, causing him severe pain.

39.     DELTA flight attendants put a second set of "tuff cuffs" on BANDARY before releasing the too-tight set with clippers.

40.     While DELTA flight attendants injured the arms, wrists, hands and shoulder of BANDARY, DELTA flight attendants shoved and battered BANDARY, causing his pants to fall to the floor.

41.     BANDARY was not wearing underwear.

42.     BANDARY was fully exposed to onlooking passengers, causing him humiliation and severe psychological distress.

43.     Because DELTA flight attendants had physically restrained him, BANDARY was completely vulnerable and unable to pick up his own pants.

44.     BANDARY pleaded with DELTA flight attendants to pull up his pants, but for a period of minutes, they refused, because he has HIV.

45.     Eventually, after minutes of having his genitals fully exposed, being handcuffed, needing to use the lavatory because of the diarrhea occasioned by having to take medication without food or water, a DELTA flight attendant pulled up BANDARY's pants.

COMPLAINT FOR DAMAGES

46.     Because DELTA flight attendants did not allow him access to the lavatory, and because he was in medical distress, BANDARY had a diarrhea accident in his pants on the aircraft.

47.     Upon landing, at the direction of DELTA flight crew, police boarded the aircraft and removed BANDARY using force.

48.     BANDARY was taken by ambulance to a hospital where he was made to undergo a psychological evaluation.

49.     BANDARY was released by the hospital.

50.     BANDARY and his traveling companion returned to the airport to get another flight home to Palm Springs, California.

51.     A DELTA agent told BANDARY that he is banned from the airline.

52.     The same DELTA agent refused to refund the unused portion of the ticket of BANDARY and his traveling companion.

53.     DELTA removed the checked luggage of BANDARY and his traveling companion and marked them with a large black "X".

54.     BANDARY and his traveling companion rented a car and drove ten (10) hours to Palm Springs, California, at his own expense.

55.     Months later, BANDARY received a criminal indictment, alleging assault of a flight attendant and interfering with the performance of duties of flight crew. If the allegations were true, which a federal jury found they were not, such a violation is punishable under 49 U.S.C. § 46504.

56.     BANDARY had to hire a lawyer at great expense and travel to Salt Lake City, Utah, to defend himself in a criminal trial before a federal jury.

57.     On March 10, 2017, BANDARY was acquitted of all charges related to the Subject Flight and the federal jury pronounced him "Not Guilty" in a unanimous verdict.

58.     BANDARY was unfairly targeted by DELTA flight attendants because he is gay, HIV positive, a naturalized citizen, and has a dark complexion.

59.     At no time did DELTA personnel ask BANDARY if he needed assistance.

60.     At no time did DELTA personnel ask BANDARY if he had a medical condition or disability that required frequent visits to the lavatory.

61.     After BANDARY explained his need to use the lavatory and disclosed his medical condition, DELTA flight attendants treated him as a threat and refused him permission to use the toilet, despite the fact that the "fasten seat belt" light was not illuminated and other passengers were permitted to use the toilet and walk about the cabin.

62.     At BANDARY's trial, DELTA's employees attempted to excuse their abusive and harmful actions by testifying BANDARY looked like a terrorist because of his dark complexion, and claiming he was a threat because he was HIV positive, stating:

a)  "HIV is a deadly disease";

b)  "I believe Mr. Bandary could look like [a terrorist], yes … Darker skin, dark hair…".

63.     Therefore, BANDARY was refused access to the toilet, forced to soil himself, battered, exposed, humiliated, physically harmed, forced to undergo a psychological evaluation in Salt Lake City, Utah, indicted, tried before a federal court and federal jury with DELTA agents testifying against him, and forced to expose publicly all manner of personal details of his life because he was not of light complexion and is HIV positive.

**FIRST CLAIM FOR RELIEF**

**NEGLIGENT HIRING, TRAINING, AND SUPERVISION**

64.     Plaintiff hereby incorporates by reference the allegations of each of the above paragraphs.

65.     In holding itself out as a common carrier and inviting the general public to use its products and services, Defendant DELTA had a duty to use reasonable care to ensure the employees it hired were fit to properly perform the duties of their jobs, were taught to refrain from profiling based on racial and sexual stereotypes, and discriminating against those who are HIV positive, and should refrain from injuring the passengers and patrons who purchased the services offered by DELTA.

COMPLAINT FOR DAMAGES

66.     Defendant DELTA negligently hired and supervised the employees that came into contact with BANDARY, including but not limited to Joy Rodemoyer, Lucy Cook, and Stephen Marchildon.  In turn, some of these individuals negligently supervised the activities of an off duty armed law enforcement officer, Nicholas Vahe, who assisted DELTA employees, when, in the course and scope of their duties, they assaulted, injured, unlawfully restrained, and publicly humiliated BANDARY.

67.     The DELTA employees engaged in activities that evidenced a lack of training and supervision including but not limited to the following areas:

    a.   Failure to train how to avoid racial profiling;

    b.   Failure to train how to avoid sexual orientation discrimination;

    c.   Failure to educate that you can't contract HIV from touching an HIV positive passenger or using the bathroom after it was used by a HIV positive person;

    d.   Failure to train how to defuse confrontations;

    e.   Failure to train proper cabin service;

    f.   Failure to train use of DELTA procedures for customer interaction;

    g.   Failure to train for proper use of restraining devices, including when to use them and how to deploy them without injuring patrons;

    h.   Failure to train its employees in basic human kindness, consideration, decency, compassion and treatment of other human beings, especially those who are sick, frail, weak or don't look like the flight attendants; and

    i.   Failure to train its employees that the duty of care owed by a common carrier to its passengers is the highest standard of care under the law.

68.     DELTA knew or should have known that failure to properly train and supervise in these areas would render the employees unfit and/or incompetent to perform certain duties.

69.     DELTA knew or should have known that the failure to train and supervise these individuals rendering them unfit and/or incompetent created a particular risk that their behavior might cause harm to others.

COMPLAINT FOR DAMAGES

70.     As a proximate result of these acts of DELTA, Plaintiff BANDARY was injured in his health, strength, and activity.  BANDARY sustained physical injury and injury to his nervous system, which caused and continues to cause great mental, physical, and nervous pain and suffering.

WHEREFORE, Plaintiff prays for judgment as fully set forth herein.

### SECOND CLAIM FOR RELIEF

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

71.     Plaintiff hereby incorporates by reference the allegations of each of the above paragraphs.

72.     On May 29, 2015, aboard DELTA Flight 1105, BANDARY, by and at the direction of DELTA employees, was physically battered and injured, intentionally and/or recklessly mistreated, verbally assaulted, publicly demeaned and humiliated for having physical diseases including HIV; erroneously profiled and targeted as a terrorist because of his race, skin color, appearance and accent; physically restrained and mocked for having to use the restroom; denied use of restroom facilities for so long that he publicly soiled his pants; and forced to stand with his pants down and genitalia exposed while handcuffed in full view of DELTA employees and fellow passengers.

73.     BANDARY was further humiliated by being forced to disembark when he was dragged off the aircraft by police in full view of the passengers and crew on the aircraft, and denied further air transportation by DELTA.

74.     DELTA employees were in a position of authority over BANDARY that gave them both real and apparent power to affect BANDARY's interests.

75.     DELTA employees knew that BANDARY was physically ill, frail, and particularly vulnerable to emotional distress.

76.     DELTA employees knew that their actions would likely result in BANDARY suffering from harm due to mental distress.

77.     The aforementioned conduct of DELTA was extreme and outrageous, exceeding the bounds of decency normally tolerated in a civilized society.

78.     As set forth above, DELTA engaged in this conduct knowing that it would cause BANDARY extreme emotional distress, or with conscious disregard of the likelihood of such an outcome.

79.     As a proximate result of the acts of DELTA, BANDARY has suffered physical injury, severe emotional distress, and has necessarily sought professional treatment for those injuries.  BANDARY has a continuing and necessary need to seek treatment, and this need for treatment contributes to BANDARY's damages in an amount that will be proved at trial.

WHEREFORE, Plaintiff prays for judgment as fully set forth herein.

### THIRD CLAIM FOR RELIEF

### ASSAULT

80.     Plaintiff hereby incorporates by reference the allegations of each of the above paragraphs.

81.     On May 29, 2015, onboard an aircraft operated and staffed by DELTA AIRLINES, INC., (hereinafter DELTA) employees of approached BANDARY, who was attempting to use the restroom because of urgent need caused by BANDARY's medical conditions, and exacerbated by DELTA's refusal to provide BANDARY water or food when needed.

82.     As BANDARY attempted to reach the restroom, he was accosted by a DELTA employee, upon information and belief thought to be Joy Rodemoyer, the flight leader on the Subject Flight.

83.     When BANDARY acknowledged that he had complained about the cabin service on the flight, the DELTA employee ordered BANDARY back to his seat, though he had an urgent need to use the restroom, and though the "fasten seat belt" light on the aircraft was not illuminated and there was no other reason for BANDARY to be seated.

84.     The DELTA employee approached BANDARY in a threatening manner, stood close to him, screamed at him, and caused him to be in fear that he would be accosted or physically assaulted by DELTA employees.

85.     DELTA's flight attendants were physically larger and/or of a greater body mass than BANDARY, who was thin and frail.

86.     By acting in the manner alleged above, the DELTA employees intended to place BANDARY in apprehension of harmful contact with him.

87.     As a result of the DELTA's acts as alleged, BANDARY was in fact placed in great fear of harmful contact with his person.

WHEREFORE, Plaintiff prays for judgment as fully set forth herein.

## FOURTH CLAIM FOR RELIEF

## BATTERY

88.     Plaintiff hereby incorporates by reference the allegations of each of the above paragraphs.

89.     On May 29, 2015, on Delta Flight 1105, DELTA employees and a person operating at the direction of DELTA employees, upon information and belief thought to be an armed law enforcement officer, grabbed BANDARY by the arms and attempted to restrain him.

90.     BANDARY did not consent to the physical contact and touching undertaken to restrain him.

91.     During the ensuing struggle, BANDARY had his left shoulder temporarily dislocated by the force applied, which was also excruciatingly painful.

92.     The DELTA employees and the person operating at the direction of DELTA then physically restrained BANDARY by placing a restraint system known as "tuff cuffs" around the wrists of BANDARY.

93.     The DELTA employees and the person operating at the direction of DELTA tightened the "tuff cuffs" so tight that it caused BANDARY great pain and physical injury, including scratches, abrasions, and contusions.

94.     Any reasonable person in the position of BANDARY would have been offended by the physical conduct and touching.

95.     BANDARY's injuries were caused by an unexpected and unusual event external to him.

96.     As a proximate result of these acts of DELTA, BANDARY was injured in his health, strength, and activity.  BANDARY sustained physical injury and injury to his nervous system, which caused and continues to cause great mental, physical, and nervous pain and suffering.

WHEREFORE, Plaintiff prays for judgment as fully set forth herein.

## **PRAYER FOR RELIEF**

Plaintiff prays for judgment against Defendant as follows:

A.  Damages to be awarded in an amount to be determined at trial, including general, special, punitive, exemplary, and compensatory damages, and all other fair and just damages according to proof;

B.  Damages to be awarded for the pain, suffering, and emotional distress experienced by BANDARY as a result of his bodily injuries, according to proof;

C.  Pre- and post-judgment interest on all damages as allowed by the law;

D.  Any other damages to which Plaintiff may be entitled under applicable law;

E.  Costs incurred in bringing this suit;

F.  Attorneys' fees; and

G.  Such other and further relief as the Court may deem just and proper.


Dated:  May 26, 2017                    Respectfully submitted,

By: ___/s/Kimberly Barone Baden

Kimberly Barone Baden (State Bar no. 207731)
kbarone@motleyrice.com
Mary F. Schiavo
mschiavo@motleyrice.com
James R. Brauchle
jbrauchle@motleyrice.com
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Telephone: 843.216.9000
Facsimile: 843.216.9450
*Attorneys for Plaintiff*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DEMAND FOR JURY TRIAL

       Plaintiffs hereby demand a trial by jury for all claims for which a jury trial is available pursuant to Fed. R. Civ. P. 38(a) and (b).

Dated:  May 26, 2017                                   Respectfully submitted,

                                             By:   __/s/Kimberly Barone Baden

                                           Kimberly Barone Baden (State Bar no. 207731)
kbarone@motleyrice.com
Mary F. Schiavo
mschiavo@motleyrice.com
James R. Brauchle
jbrauchle@motleyrice.com
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Telephone: 843.216.9000
Facsimile: 843.216.9450

*Attorneys for Plaintiff*