John P. Mertens (#252762)
PIA ANDERSON MOSS HOYT, LLC
136 E. South Temple, Suite 1900
Salt Lake City, UT 84111
Telephone: (801) 350-9000
jmertens@pamhlaw.com
*Attorneys for Plaintiff*
Atef Bandary

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**

| | |
|---|---|
| ATEF BANDARY, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>DELTA AIR LINES, INC., a corporation,<br><br>Defendant. | Civil No. 5:17-cv-1065<br><br>**THIRD AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMAND** |

Plaintiff ATEF BANDARY ("*Bandary*"), through undersigned counsel, hereby alleges and complains of Defendant DELTA AIR LINES, INC. ("*Delta*"), as set forth below:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. § 1331, because this action arises, in part, under the Convention for the Unification of Certain Rules for International Carriage by Air (hereinafter the "*Montreal Convention*"), a treaty of the United States, which the United States and Argentina (among others) have ratified. Defendant Delta is a signatory to the International Air Carrier Transportation Association's Intercarrier Agreement on Passenger Liability, which modifies and/or waives certain terms of the Montreal Convention as applicable to Delta.

2. This action arises under the Montreal Convention because a portion of the actions complained of occurred during an international flight, including embarkation and disembarkation, and related acts.

3. Jurisdiction and venue is permitted in this District pursuant to Article 33 of the Montreal Convention because Bandary's principal and permanent residence is in the Central District of California, Bandary's destination on his flight itinerary was in this District, and Delta operates services for the carriage of passengers by air to and from this District.

4. The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over additional claims which are related to the claims pled under the Montreal Convention, and which form part of the same case or controversy.

5. The Court also has jurisdiction over this action under 28 U.S.C. § 1332. This case involves a dispute between Bandary, a citizen of the State of California, and Delta, a corporation incorporated in the State of Delaware, with its principal place of business in the State of Georgia; and the amount in controversy exceeds the $75,000 jurisdictional minimum of this Court.

6. Defendant is subject to personal jurisdiction in this Court because it engages in substantial business and/or commerce in this District.

## II. PARTIES

7. Plaintiff Bandary is a citizen of the United States of America and the State of California. His primary residence is in Riverside County.

8. Defendant Delta is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the State of Georgia.

9. Defendant Delta is a registered business entity with the California Secretary of State. Delta routinely engages in continuous and systematic business in this District, and is, and at all times relevant was, a common carrier for hire in the business of soliciting and/or transporting passengers for regularly scheduled flights in and out of the Palm Springs International Airport (PSP), and other airports in this District.

10. Defendant Delta is, and at all times relevant was, a carrier within the meaning of the Montreal Convention, operating flights (or flight itineraries) between Palm Springs, California, to Buenos Aires, Argentina, and throughout the world.

11. During and around May 28-29, 2015, Bandary was a passenger on an international itinerary ("*Itinerary*") from Buenos Aires, Argentina, with an intended destination of Palm Springs, California, and scheduled layovers at airports in or near Atlanta, Georgia and Salt Lake City, Utah.

12. Defendant Delta entered into a contract of carriage with Bandary, and at all material times was in control of, and responsible for, his safe transport to Palm Springs, California, according to the Itinerary.

13. As part of the Itinerary, Bandary was a passenger on board Delta Flight 1105 on May 29, 2015, between Atlanta, Georgia, and Salt Lake City, Utah ("*Flight*").

## III. GENERAL ALLEGATIONS

### A. Background About Atef Bandary.

14. Bandary was born and raised in Egypt

15. At age 5, he lost most of the vision in one eye, and has suffered from various medical infirmities since.

16. Bandary is gay, and while growing up and as an adult had to hide his sexual orientation due to the treatment of homosexuality and homosexuals in the Middle East.

17. Bandary earned an accounting degree in 1981 from Cairo University.

18. Bandary lived in Kuwait and worked for Kuwaiti Airways beginning in 1983, and was present when the Iraqi army invaded.

19. Bandary escaped to Egypt after nearly a month, and assisted friends, colleagues, and others who escaped. Kuwaiti Airways set up an office in Cairo where Bandary temporarily lived and worked during the war before returning to Kuwait.

20. During the war, some of Bandary's co-workers lived and interacted more closely with Bandary. This gave them an opportunity to view his lifestyle, and along with the fact that he was proceeding through his twenties and into his thirties without marrying or appearing to date women, several co-workers learned or suspected that he is gay.

21. After the war, Bandary returned, but felt that Kuwaitis (both the people and the

1 government) had become suspicious of foreigners, particularly Arabic foreigners.

2     22.    This general hostility to foreigners was increased in the case of Bandary. He came to know that his colleagues, having learned of or suspected his sexual orientation, were worried that associating with him would lead to accusations that they were gay as well.

    23.    In March of 1992, Bandary was working at his desk when four men came to the office asking for "Atef Bandary." He confirmed who he was. At that point, they asked Bandary to come with them.

    24.    The men took Bandary to a large SUV, where he was beaten and dragged to his apartment in Kuwait.

    25.    The men searched his apartment, and then took Bandary and many of his papers and writings to the police station. He was blindfolded, and was only given boiling water to drink. In the morning when his blindfold was removed, he saw that he was surrounded by people bearing marks of torture on their bodies and faces.

    26.    Bandary was questioned about his sexuality and beaten more. He was fortunate to have a family connection who was able to get him out of the police station.

    27.    Bandary was sent back to work with strict orders not to reveal what had happened to him. Ultimately, however, he was fired.

    28.    These events scarred Bandary emotionally, and left him with persistent anxiety. They also gave him greater than usual apprehension concerning being placed into custody.

    29.    These events also inspired Bandary to seek refuge in the United States. He arrived on a tourist visa in 1992 and immediately applied for asylum due to the treatment of homosexuals in Kuwait and Egypt. He was granted asylum in 1998, and subsequently became a United States Citizen.

    30.    Once in the United States, Bandary was finally able to live openly as a gay man. Unfortunately, as this was in the early 1990s. During that time, HIV/AIDS was poorly understood, and was still spreading rapidly, particularly in the gay community.

    31.    Bandary was diagnosed with HIV in 1996. HIV is a terrible illness that causes or

PIA ANDERSON MOSS HOYT, LLC
136 E. South Temple, Suite 1900
Salt Lake City, Utah 84111

-- 4 --

THIRD AMENDED COMPLAINT

1 complicates other ailments. For Bandary, HIV has caused him to suffer (or has aggravated)
2 ailments including diverticulitis, irritable bowel syndrome, lower back pain, and HIV-related
3 wasting syndrome. Bandary had lost approximately fifty pounds in the last few years leading
4 up to the incident in May of 2015. He also was and is plagued by the need to frequently and
5 immediately visit the restroom. Bandary's chronic diarrhea has rendered him disabled since
6 2004.

### B. Bandary's Experience Flying the Itinerary.

32. On or about the evening of May 28, 2015, Bandary boarded an overnight Delta flight from Buenos Aires, Argentina, to Atlanta, Georgia, to begin the Itinerary.

33. In addition to the medical issues described above, Bandary has also suffered significant dental issues. The purpose of his trip to Buenos Aires was to visit a dentist for a complex procedure. When he boarded his flight, he had only four natural teeth, and a host of temporary replacement teeth.

34. On the morning of May 29, 2015, Bandary changed planes in Atlanta, Georgia, after a layover of approximately an hour and a half, and boarded the Flight to continue the Itinerary.

35. Bandary was a passenger on the Flight along with his traveling companion Gary Effertz ("*Effertz*").

36. Tired from his overnight flight, and in pain from his dental work, Bandary nevertheless needed to take medication for his ailments. Without food and water, his medications aggravate his gastrointestinal issues and cause diarrhea. To assist him, he requested food and water from one of the flight attendants.

37. The flight attendants later confirmed they had identified Bandary as a "needy" passenger. Several of the flight attendants on the Flight prefer to avoid needy passengers, going so far as to accept pay reductions to avoid First Class, where needy passengers are more prevalent. They also confirmed that while flight attendants attempt to hide their annoyance from passengers, eye rolling or other rude behavior towards or about "needy" passengers is

PIA ANDERSON MOSS HOYT, LLC
136 E. South Temple, Suite 1900
Salt Lake City, Utah 84111

1   common. The flight attendant refused to provide Bandary with food and water, so he was
2   forced to take his medication on an empty stomach, aggravating his diarrhea.

3   38.   Because Bandary was experiencing diarrhea on the Flight, he got out of his seat
4   on numerous occasions to use the lavatory. Luckily the air was calm and the "fasten seat belt"
5   light was not illuminated on any of these occasions.

6   39.   Bandary also walked around the aisles of the Flight to speak with Effertz, who
7   was seated in another row, and to stretch his legs on this approximately 4-hour flight. Effertz
8   suffers from bladder cancer and Parkinson's Disease, and Bandary is Effertz's primary
9   caregiver.

10   40.   Bandary got the attention of another flight attendant, Lucy Cook ("*Cook*"), and
11   he complained to her of the other flight attendant's poor service. Cook brought Bandary drinks
12   and a sandwich, but unfortunately due to his dental work, he was unable to eat the sandwich.
13   Nevertheless, he appreciated Cook's efforts, but did intended to complain to Delta about the
14   other flight attendant.

15   41.   To assist in making his complaint, he took a photograph of two flight attendants,
16   including the one who had been dismissive of him..

17   42.   Subsequently, Bandary went to stand in line for the restroom in the rear of the
18   aircraft. He had an urgent need occasioned by his having to take his medication without water
19   or a snack.

20   43.   Meanwhile, after learning of his photograph, Cook reported the entire sequence
21   of events as of that time to the lead flight attendant, Joy Rodemoyer ("*Rodemoyer*").  This
22   report included Bandary's dissatisfaction with the service, the sandwich and drinks she gave
23   Bandary as an accommodation, and the photograph Bandary took.

24   44.   Cook was aware of no policy or law prohibiting the taking of photographs in
25   public places, such as aircraft. She believed that Rodemoyer should know of the incident, but
26   that confronting Bandary was unnecessary.

27   45.   Flight attendants, particularly since September 11, 2001, have been given

PIA ANDERSON MOSS HOYT, LLC
136 E. South Temple, Suite 1900
Salt Lake City, Utah 84111

substantial authority by the government. This authority has come with limited oversight. Interfering with a flight crew, which was previously a federal crime, has become a more seriously prosecuted crime, and flight attendants know that reporting passengers as unruly can lead to substantial consequences, including FBI investigation and federal prosecution. Avenues for passenger complaints are limited, and numerous well-publicized on-aircraft events in the time between May 2015 and today have borne out the wisdom that power corrupts, at least as demonstrated by a handful of flight attendants on several major airlines.

46. Swelled with this authority, Rodemoyer determined to confront Bandary anyway. She approached Bandary and asked him if his name was "Atef Bandary." He confirmed who he was. At that point, Rodemoyer confronted him.

47. Without making an attempt to determine what happened, Rodemoyer approached Bandary in a threatening and/or assertive manner. She ordered him to return to his seat and remain there for the rest of the flight. Bandary is a frail and sick person, and was both physically and emotionally intimidated by Rodemoyer and her team, as well as passengers enlisted by Delta employees to assist in intimidating Bandary.

48. Bandary was waiting in line for the restroom, and was concerned that returning to his seat would cause him to soil himself (which did indeed occur). He did not understand why Rodemoyer was ordering him to his seat when he had done nothing wrong – and at this point none of the flight attendants could identify anything wrong with his conduct. The "fasten seat belt" light was not illuminated, and there was no reason for Bandary to be asked to stay out of the restroom.

49. Rodemoyer did not ask Bandary if he had a disability, medical condition or urgent need to use the restroom, indeed none of the flight attendants did. Bandary's frequent trips to the restroom, his standing in line for the restroom, and his observable physical condition make these very pertinent and obvious questions.

50. Rodemoyer escalated the confrontation unnecessarily, making Bandary fearful that he would be forced to soil himself or confront the flight attendants over their instructions

PIA ANDERSON MOSS HOYT, LLC
136 E. South Temple, Suite 1900
Salt Lake City, Utah 84111

-- 7 --
THIRD AMENDED COMPLAINT

that he avoid the restroom. Bandary attempted to explain to Rodemoyer that he needed to use the restroom urgently, but to no avail. Ultimately, both Rodemoyer and Cook began to scream at him, and at this time, the conversation became very animated on both sides.

51. Rather than attempt to de-escalate the conflict initiated by Rodemoyer, Cook and Rodemoyer instigated this confrontation to punish Bandary for complaining about his flight experience and/or being a "needy" passenger. When this upset Bandary, they determined to place Bandary in handcuffs.

52. Rodemoyer contacted the flight crew to report a disturbance on the Flight, and enlisted the assistance of an armed federal agent, Nicholas Vahe ("*Vahe*") who was traveling as a passenger to subdue Bandary. Vahe's actions described herein were at the express direction of Rodemoyer and other flight attendants.

53. During this struggle, Bandary's left shoulder was dislocated by the force applied, which was excruciatingly painful. Bandary was also placed into plastic handcuffs, known as "tuff cuffs" which restrained his hands behind his back. These cuffs were initially placed on his wrists too tightly, which injured Bandary and caused pain.

54. At this time, Bandary was beaten by the flight attendants and Vahe.

55. Next, Bandary was held in the galley before being manhandled back to a seat. While Bandary was restrained and during their assault, the flight attendants and Vahe caused Bandary's pants to become loose and drop, exposing him to onlooking passengers and embarrassing him. Because he was restrained, he was unable to recover his pants without assistance.

56. Eventually, after minutes of having his genitals fully exposed, being handcuffed, and needing to use the restroom because of the diarrhea occasioned by having to take medication without food or water, a Delta flight attendant pulled up Bandary's pants.

57. Because Delta flight attendants did not allow him access to the restroom, and because he was in medical distress, Bandary had a diarrhea accident in his pants on the aircraft.

58. Rather than apologize for their error in judgment in the way they handled Bandary, the Delta flight attendants instead doubled-down on their error. They contacted (or advised the flight crew to contact) law enforcement to request assistance with a passenger having "mental" issues and/or was a "mentally disturbed passenger." In many parts of the world, homosexuals are wrongfully described, considered, and treated as if mentally defective. This magnified the psychological harm and indignity to Bandary.

59. At no time did Delta personnel ask Bandary if he needed assistance, or if he had a medical condition or disability that required frequent visits to the lavatory.

60. After Bandary explained his need to use the lavatory and disclosed his medical condition, Delta flight attendants treated him as a threat and refused him permission to use the toilet, despite the fact that the "fasten seat belt" light was not illuminated, and other passengers were permitted to use the restroom and walk about the cabin.

61. Upon landing, at the direction and request of Delta personnel, police boarded the aircraft and removed Bandary using force. They took him to an ambulance where he was cuffed to a gurney and forced to undergo an involuntary psychological evaluation.

62. Adding insult to injury, Bandary's and Effertz's baggage was removed from the aircraft and marked with X's, defacing it. It was also searched, and numerous items were missing.

**C.  After the Flight is Over, Delta Employees Persecute Bandary.**

63. While Bandary was transported to the hospital, numerous Delta employees gave statements to the Salt Lake City Airport Police concerning Bandary. Though Bandary was innocent, these statements falsely portrayed Bandary as the aggressor, and were designed and intended to shield their mistreatment of Bandary and justify their behavior by convincing relevant authorities to prosecute Bandary.

64. When contacted by the FBI, the Delta employees repeated their improper reports, which resulted in Bandary receiving a criminal indictment, alleging Bandary assaulted and intimidated, (or attempted to do so) and thereby caused interference with a flight crew. If

-- 9 --
THIRD AMENDED COMPLAINT

the allegations were true, which a federal jury found they were not, such a violation is punishable under 49 U.S.C. § 46504.

65. Bandary had to hire a lawyer, pay for travel to Salt Lake City, Utah, for himself and witnesses, all at great expense, to defend himself in a criminal trial before a federal jury.

66. During the pendency of his criminal case, which lasted approximately 20 months, Bandary had to report twice a month to a probation officer. This required a round-trip of about 90 miles from his home.

67. During the pendency of his criminal case, which lasted approximately 20 months, Bandary's United States passport was taken away, and he was unable to travel freely. This interfered with his travel generally, and with follow-up dental care in Argentina.

68. Testimony at trial indicated that Bandary was identified, harassed, confronted, and ultimately reported to the police because of normal behavior, combined with his appearance, his HIV positive status, and due to suspicions of terrorism based on his dark complexion, racial characteristics, and effects of his medical conditions.

69. On March 7, 2017, Bandary was acquitted of all charges related to the Flight and the federal jury pronounced him "Not Guilty" in a unanimous verdict.

**D.  After the Flight is Over, Harm Continues to Befall Bandary.**

70. Bandary was cleared and released from the hospital, and attempted to complete his itinerary.

71. Delta refused to board Bandary for his final trip to Palm Springs, so he was forced to rent a car and drive ten hours with Effertz. Delta informed Bandary that he is banned for life from its airline.

72. Delta did not compensate him in any way, nor refund him for the leg of the Itinerary it would not honor.

73. As indicated above, Bandary suffered physical injuries to his wrists, hands, and shoulder.

74. Bandary also suffered emotional and psychological injuries as a result of his

-- 10 --
THIRD AMENDED COMPLAINT

treatment at the hands of Delta. Bandary has sought and received counselling and medical therapy for these injuries.

75. It was his appearance and/or manner, not any action by Bandary, that drew the attention of the flight attendants. At no time prior to the confrontation by Rodemoyer did Bandary do anything out of the ordinary on the Flight, except that he was a "needy" passenger which annoyed the flight attendants.

76. The physical injury, emotional injury, and embarrassment, coupled with the fact that Delta unfairly targeted Bandary because of his appearance and/or manner harkened back to the incident in Kuwait where Bandary was arrested and harassed for his sexual orientation, increasing the psychological distress for Bandary.

**E.  Bandary's Humiliation**

77. Bandary was refused access to the toilet, forced to soil himself, assaulted, battered, exposed, humiliated, physically harmed, forced to undergo a psychological evaluation in Salt Lake City, Utah, refused travel, indicted and tried before a federal court and federal jury with Delta agents procuring the prosecution and testifying against him, forced to give up his passport for a number of months and was limited in his ability to travel, and forced to expose publicly all manner of personal details of his life because he was viewed as a "needy" passenger, whose completely innocent conduct was interpreted as terrorism because of his appearance and manner.

78. Bandary left Kuwait to escape this type of persecution, only to find it in the United States, at the hands of a group of flight attendants led by a flight attendant drunk on her authority.

**FIRST CLAIM FOR RELIEF**

**Bodily Injury under the Montreal Convention**

79. Bandary hereby incorporates by reference all allegations listed above.

80. The events above, being external to Bandary and being unexpected or unusual, constitute an "accident" for purpose of the Montreal Convention.

-- 11 --
THIRD AMENDED COMPLAINT

81. These events took place on board the aircraft, or during embarkation and disembarkation.

82. These events resulted in physical and psychological injury to Bandary, including medical bills, pain and suffering, humiliation, and embarrassment. Bandary has experienced sleeplessness, anxiety, stress, depression, humiliation, emotional distress, loss of self-esteem, excessive fatigue, mental anguish and a nervous breakdown, and has necessarily sought professional treatment for those injuries. Bandary has a continuing and necessary need to seek treatment, and this need for treatment contributes to Bandary's damages.

83. Bandary has been injured in his health, strength, and activity. Bandary sustained physical injury and injury to his nervous system, which caused and continues to cause great mental, physical, and nervous pain and suffering.

84. Bandary also had his baggage defaced.

85. These injuries were sustained in an amount to be proven at trial, but not less than $1,000,000. Under the Montreal Convention, Delta is strictly liable for these damages.

## SECOND CLAIM FOR RELIEF

### Malicious Prosecution

86. Bandary hereby incorporates by reference all allegations listed above.

87. Delta, and its agents and employees in the scope and course of their duties procured the initiation of criminal proceedings against Bandary, despite his innocence, by making reports to the Salt Lake City Airport Police and the FBI.

88. Delta, and its agents and employees lacked probable cause to initiate the prosecution, being aware that the entire confrontation was caused, initiated, and engineered by their own wrongful acts.

89. The purpose of procuring prosecution against Bandary was to justify the wrongful acts of Delta, its agents and employees, in mistreating Bandary as outlined above.

90. Bandary was acquitted of all criminal charges.

91. As a result of the malicious prosecution of Bandary, he was denied travel, his

passport was seized, he was forced to drive to Salt Lake City, Utah to face trial, and was forced to pay for the travel and lodging of himself and witnesses. He was placed on probation and restricted in his freedom. He was unable to complete his dental procedures in a timely fashion in Argentina.

92. Bandary suffered further emotional and psychological harm as a result of his prosecution.

93. Bandary ultimately suffered damages in an amount to be proven at trial, but not less than $500,000.

## PRAYER FOR RELIEF

Bandary prays for judgment against Delta as follows:

94. On the First Claim for Relief, compensatory damages for property damage, personal injury, pain and suffering, emotional and psychological harm, in an amount to be proven at trial, but not less than $1,000,000.

95. On the Second Claim for Relief, compensatory damages for attorney's fees, travel and lodging, interference with freedom and lifestyle, emotional and psychological harm, in an amount to be proven at trial, but not less than $500,000.

96. On the Second Claim for Relief, punitive and exemplary damages.

97. On all claims for relief, attorney's fees, costs of suit, and pre- and post-judgment interest to the extent permitted by law; and

98. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a jury on all issues so triable.

Respectfully Submitted,

DATED: November 30, 2017   PIA ANDERSON MOSS HOYT, LLC

By: _____
John P. Mertens
*Attorneys for Plaintiff Atef Bandary*

-- 13 --

THIRD AMENDED COMPLAINT

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of November 2017, the foregoing Third Amended Complaint was served via the Court's electronic filing system to Richard G. Grotch and Min K. Kang of Coddington, Hicks & Danforth, attorneys for Defendant, who have appeared electronically in this action.

/s/ John P. Mertens

-- 14 --
THIRD AMENDED COMPLAINT