1

Randolph S. Hicks, Esq. – SBN 83627
**CODDINGTON, HICKS & DANFORTH**
**A Professional Corporation, Lawyers**
555 Twin Dolphin Drive, Suite 300
Redwood City, CA  94065-2133
Tel.: 650.592.5400
Fax: 650.592.5027
Email: rhicks@chdlawyers.com

2

3

4

5

Richard G. Grotch, Esq. – SBN 127713
**JETSTREAM LEGAL APC**
80 Cabrillo Highway North, Suite Q-325
Half Moon Bay, CA  94019
Tel.:   415.691.1691
Email: rgrotch@jetstreamlegal.com

6

7

8

**ATTORNEYS FOR** Defendant
Delta Air Lines, Inc.

9

10

11                UNITED STATES DISTRICT COURT

12              CENTRAL DISTRICT OF CALIFORNIA

13                    EASTERN DIVISION

| | |
|---|---|
| ATEF BANDARY,<br><br>                          Plaintiff,<br><br>vs.<br><br>DELTA AIR LINES, Inc., a corporation;<br><br>                          Defendant | Case No. 5:17-cv-1065 DSF AS<br><br>DEFENDANT DELTA AIR LINES, INC.'S UPDATED TRIAL BRIEF<br><br>Date:            October 12, 2021<br>Time:            8:30 a.m.<br>Courtroom:   7D<br><br>Honorable Dale S. Fischer<br>United States District Judge |

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant Delta Air Lines, Inc. ("Delta") respectfully submits the following updated trial brief in advance of the October 12, 2021, trial in this case. This is intended to update the trial brief Delta previously filed in advance of an August 6, 2019, trial date and before certain legal issues had been resolved by the Court.

## I.     MATTERS ALREADY DETERMINED BY THE COURT

The Court has determined that "[t]his case concerns a confrontation between Plaintiff and the flight attendant employees of Defendant while in flight." Doc. 153 at p.1. "Because the flight in question was a leg in Plaintiff's international itinerary, . . the Montreal Convention applies to claims for injuries suffered onboard the flight." *Id.* at p.4. "The Montreal Convention provides the exclusive remedy for international passengers seeking damages against airline carriers." Doc. 30 at p.1 (citing *Narayanan v. British Airways*, 747 F.3d 1125, 1127 (9th Cir. 2014)).

"Under Article 17(1) of the Montreal Convention an air carrier is 'liable for damage sustained in case of death or *bodily* injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking.'" Doc. 30 at pp.1-2 (emphasis added) (quoting Montreal Conv., Art. 17(1)).

"The United States Supreme Court has defined an 'accident' under the Montreal Convention – and its predecessor, the Warsaw Convention – to be an 'unexpected or unusual event or happening that is external to the passenger' and not 'the passenger's own internal reaction to the usual, normal, and expected operation of the aircraft.'" Doc. 153, p.5 (quoting *Olympic Airways v. Husain*, 540 U.S. 644, 646 (2004) (in turn quoting *Air France v. Saks*, 470 U.S. 392, 405-406 (1985))).

Finding "that a shouting match and physical struggle took place onboard between Plaintiff and the flight attendants, and that Plaintiff was handcuffed and taken into custody" (Doc. 153 at p.7), and that those are not "events that take place in the normal course of air travel" (*id.*), this Court found that those events constitute an "accident" for purposes of Article 17 of the treaty (*id.*).

With respect to what injuries are potentially compensable in this case, the Court has determined the following. *First*, "[t]here is no question that a plaintiff cannot recover for purely emotional or mental harm." Doc. 214 at p.1 (citing *Carey v. United Airlines*, 255 F.3d 1044, 1051 (9th Cir. 2001) (interpreting analogous provision of Warsaw Convention). *Second*, "[a] plaintiff also cannot recover for mental or emotional injury that results in physical manifestations." *Id.* (citing *Carey*, 255 F.3d at 1051-1053). *Third*, a "showing that the plaintiff suffered bodily harm" does not "allow[] the plaintiff to recover all of his mental or emotional damages … if those damages do not stem from the bodily harm." *Id.* at p.2.

And, the Court has found that as to reports by Delta employees to law enforcement, and with respect to the potential liability for the reports or the consequences of the reports, Delta is immunized from liability. That immunity is provided by the Aviation and Transportation Security Act, 49 U.S.C. § 44941 ("ATSA").

Specifically, the Court determined that (1) 49 U.S.C. § 44941(a) "does, and was intended to, apply to cases under the Montreal Convention" (*id.* at pp.4-5), (2) "§ 44941(a) applies to all of the claims" in this case (*id.* at p.5), (3) "the language and purpose of § 44941(a) support the application of *broad* immunity" (*id.* at p.6 (emphasis added)) and (4) "[i]mplicit in immunity for making reports to law enforcement is immunity from liability for whatever law enforcement might do with those reports[; o]therwise, immunity would be largely meaningless" (*id.*). Lastly, the Court found that "[b]ecause Plaintiff has no evidence of actual knowledge or reckless disregard as to the truth or falsity of the reports made by Defendant, the § 44941(b) exception to immunity does not apply" (*id.*).

///

///

///

///

Defendant's Updated Trial Brief
Case No:  5:17-cv-1065 DSF AS

## II.    THE FEW ISSUES THAT REMAIN UNRESOLVED

In this case brought pursuant to Article 17 of the Montreal Convention, the issues to be resolved are few and narrow. Plaintiff laid out most of these elements in his own memorandum of contentions of fact and law ("MCFL"). Doc. 177. They are the following.

*First*, "Plaintiff was flying on an international itinerary." *Id.* at p.1. This is undisputed.

*Second*, "[t]he occurrence of an 'accident' as that term is defined in the Montreal Convention." *Id.* at p.2. As noted, the Court has found that the following "accidents" took place: "a shouting match and physical struggle took place onboard between Plaintiff and the flight attendants, and … Plaintiff was handcuffed and taken into custody." Doc. 153 at p.7. In his MCFL, plaintiff was a bit more expansive, stating that he claims that "the Flight Attendants approached Mr. Bandary, denied him use of the restroom, and engaged in sustained verbal confrontation with him, ultimately placing him in handcuffs and turning him over to police for arrest." Doc. 177 at p.2.

However, now that the Court has found that ATSA immunity applies, Delta should be immunized for (a) at least some portion of the verbal exchange and physical struggle (depending on evidence regarding the timing of Delta's report to law enforcement); (b) the placement of handcuffs by law enforcement; and (c) the other actions of law enforcement.

*Third*, as plaintiff acknowledges, "[t]he accident must cause a bodily injury." Doc. 177 at p.2. All that remains to be decided are: (a) whether plaintiff sustained a bodily injury that was caused by (1) "a shouting match and physical struggle onboard between Plaintiff and the flight attendants" and, to the extent Delta is not immunized by ATSA, (2) being handcuffed and taken into custody; and (b) the nature and extent of the accident-caused bodily injury, if any.

Defendant's Updated Trial Brief
Case No:  5:17-cv-1065 DSF AS

*Fourth*, plaintiff must prove his compensable damages. These are limited to damages sustained as a result of the accident-caused bodily injury, if any (*Jack v. Trans World Airlines*, 854 F. Supp. 654, 667 (N.D. Cal. 1994)). Again, however, this is subject to Delta's immunity under ATSA.

In addition, Delta has asserted an affirmative defense under Article 20 of the Montreal Convention. Article 20 provides for exoneration of the airline. It states, in pertinent part, that:

> If the carrier proves that the damage was caused or contributed to by the negligence or other wrongful act or omission of the person claiming compensation, or the person from whom he or she derives his or her rights, the carrier shall be wholly or partly exonerated from its liability to the claimant to the extent that such negligence or wrongful act or omission caused or contributed to the damage.

Though Delta disputes that its reasonableness should be at issue in this case, the Court concluded that under Article 20, "Plaintiff's actions will be judged in the context of Delta's actions[, t]he reasonableness of Delta's actions could impact the reasonableness of Plaintiff's actions." Doc. 239 at p.2.

Even if plaintiff is permitted to proffer evidence of the reasonableness of Delta's conduct, he should not be allowed to turn this into a *discrimination* case. There are several reasons why Delta's motivation – whether benevolent or invidious, discriminatory or unbiased – is irrelevant in this case.

For one, the Court previously ruled that this is not a discrimination case. The first amended complaint contained a claim under Section 1981. Doc. 9, ¶¶ 99-116. But the Court granted Delta's motion to dismiss that claim. Doc. 30. When the statutory discrimination claim re-appeared in the second amended complaint, plaintiff himself moved to strike his pleading and his motion was granted. Doc. 36. The

Defendant's Updated Trial Brief
Case No: 5:17-cv-1065 DSF AS

operative, third amended complaint, properly and in accordance with the Court's prior ruling, does not include a discrimination claim.[1]

Not only has the Court stated there can be no discrimination claim, but plaintiff previously acknowledged as much. In his MCFL, the words "discriminate" and "discrimination" appear nowhere. And, plaintiff doesn't so much as hint at discrimination as an issue pertinent to the case. See Doc. 177. Similarly, the [Proposed] Final Pretrial Conference Order jointly lodged by the parties on June 25, 2019, says nothing about discrimination as an issue in this case.

Beyond the realities that (a) the Court determined there can be no discrimination claim in the context of this case and (b) plaintiff has not put discrimination at issue, including in any of his pretrial submissions, there is no *relevance* to allegations of discrimination. Plaintiff's only claim, under Article 17 of the Montreal Convention, is a strict liability, no fault claim. Once it is determined there was an "accident" – as the Court did – all that remains is for plaintiff to prove the accident caused a bodily injury and that the bodily injury caused him to sustain damage.

It would be prejudicial in the extreme for plaintiff to benefit from Article 17's pro-passenger strict liability regime *and then* be allowed to "pile on" with irrelevant evidence of what plaintiff conjures (and he can only speculate[2]) were Delta's motives (i.e., to discriminate against him). Any such irrelevant, time consuming, confusing

---

[1]     The Court correctly found that plaintiff's discrimination claim was preempted by the treaty. See, e.g., *Berlin v. Jetblue Airways Corp.*, No. 18-CV-1545 (MKB) (LB), 2020 U.S. Dist. LEXIS 15959, at *17 (E.D.N.Y. Jan. 30, 2020) (federal civil rights and discrimination claims, such as those brought under Section 1981 or Section 1983, are precluded by the Montreal Convention if they arise from acts that fall under the Montreal Convention's substantive scope.)

[2]     Plaintiff's deposition testimony shows his uncertainty on this point: "I cannot really judge what the reason is. I am really confused. What was their justification? What was the reason? Is it race? Is it color? Homosexual? I don't know." Bandary Depo. p.263.

Defendant's Updated Trial Brief
Case No:  5:17-cv-1065 DSF AS

and highly prejudicial evidence is inadmissible under Rules 402 and 403 of the Federal Rules of Evidence.[3]

## III.   ISSUES PERTINENT TO PLAINTIFF'S CLAIMED DAMAGES

While a passenger-plaintiff is afforded the benefit of establishing an air carrier's liability without proof of fault, the treaty also sets limits on a claimant's recovery when the conditions for recovery are met. See *Seshadri v. British Airways PLC*, No. 3:14-cv-00833-BAS (WVG), 2014 U.S. Dist. LEXIS 156016, at *12 (S.D. Cal. Nov. 4, 2014) (citing Montreal Conv., at arts. 17-19, 21-22). A Montreal Convention plaintiff does not have recourse to the full panoply of damages that might be allowed in a traditional tort action.

Given the admissible evidence, the limitation on available damages is particularly significant in this case. Even though the Court determined that an "accident" occurred on the subject flight, plaintiff cannot prove he sustained any *legally compensable* injury caused by the accident. The Court's prior rulings regarding Delta's immunity under ATSA and the scope of legally compensable emotional distress damages, cabin the damages plaintiff may permissibly seek in this case.

### A.   The Effect of ATSA Immunity

As this Court recognized, ATSA immunity not only applies to *reports* of suspicious activity, but also to harm allegedly *resulting* from the reports. As the Court stated, "[i]mplicit in immunity for making reports to law enforcement is immunity from liability for whatever law enforcement might do with those reports. Otherwise, immunity would be largely meaningless. The purpose of § 44941(a) is to encourage reports to law enforcement. That purpose would clearly be undercut if airlines and

---

[3]   Even farther afield, prejudicial and irrelevant is plaintiff's professed intention to introduce evidence of settlements of other discrimination claims involving Delta and individuals with no connection to this case. Delta objects strenuously to all such evidence, all the more so because it was never disclosed in pretrial discovery.

airline personnel would be potentially liable for the independent actions of law enforcement after a report was made." Doc. 214 at p.6.

Plaintiff has never claimed – and couldn't plausibly do so now – that he sustained any bodily injury *before* he was restrained by the law enforcement officer (Special Agent Nick Vahe) to whom plaintiff's inexplicable, uncontrolled behavior had been reported by the Delta crew.

In fact, in discovery, plaintiff stated it was even later that he was physically injured. He claims that "[d]uring disembarkation, [he] was met on the plane by law enforcement personnel who . . . . injured Mr. Bandary by roughly removing him from the aircraft, then further injured Mr. Bandary by forcibly transporting him to a hospital for an involuntary psychiatric evaluation." Plaintiff's response to Delta's Request for Admission No. 3. It was in *that process* that plaintiff maintains he "received physical injuries to his shoulder . . . as well as bruising to his wrists, and emotional/psychological trauma." *Id.*

In either case, even by his own account, plaintiff allegedly sustained a bodily injury *only after* Delta reported his behavior to law enforcement and responsibility for responding to those reports transferred to law enforcement. Under ATSA, Delta is therefore not liable for the alleged injury as a matter of law.

## B.    The Effect of The Court's Ruling on Emotional Injuries

"There is no question that a plaintiff cannot recover for purely emotional or mental harm. *Carey v. United Airlines*, 255 F.3d 1044, 1051 (9th Cir. 2001) (interpreting analogous provision of Warsaw Convention). A plaintiff also cannot recover for mental or emotional injury that results in physical manifestations. *Id.* at 1051-53." Doc. 214 at p.1 (emphasis added).

The Court determined that recovery for mental or emotional damages is "limited to such damages that stemmed from bodily harm." Doc. 214 at p.2. The Court *rejected* plaintiff's request to ignore the causation requirement in the Montreal Convention as well as his argument (as characterized by the Court) that "any bodily

injury suffered in the course of an accident, no matter how slight, opens up recovery for all mental and emotional distress, no matter how unrelated to the bodily injury." *Id.* at p.3. The Court noted plaintiff's position "would lead to absurd results surely not intended by the drafters of Article 17." *Id.*

This Court's holding is fully consistent with, and ultimately derives from the holding in, *E. Airlines v. Floyd*, 499 U.S. 530, 111 S. Ct. 1489 (1991). In *Floyd*, the Supreme Court held that Article 17 of the Warsaw Convention did not allow recovery for mental injury that is unaccompanied by physical injury. *Carey*, 233 F.3d at 255 F.3d at 1051. "In *Floyd*, all three engines of an airplane had failed shortly after takeoff, at which point the crew notified the passengers that they would ditch the plane in the ocean. Fortunately, the crew managed to restart an engine and land safely. *Id.*

Since *Floyd*, Courts have considered the question of when, if ever, to allow recovery for mental injuries in cases governed by the one of the aviation treaties. There is one answer to this question that has been variously described as representative of "the majority rule" (*Ligeti v. British Airways PLC*, 00 civ. 2936 (FM), 2001 U.S. Dist. LEXIS 15996, at *12-13 (S.D.N.Y. Oct. 4, 2001)) and "[t]he more mainstream view" (*Lloyd v. Am. Airlines (in Re Air Crash at Little Rock Ark.)*, 291 F.3d 503, 509 (8th Cir. 2002)); and it is "widely attributed to the decision of the Northern District of California in *Jack [v. Trans World Airlines*, 854 F. Supp. 654 (N.D. Cal. 1994)]."

*Jack* involved emotional distress claims by international passengers aboard a TWA flight when it attempted to depart from New York's JFK Airport bound for San Francisco. The aircraft experienced an aborted takeoff, crash and fire on the runway. The fire "completely destroyed the plane but all passengers survived. During the aborted takeoff and evacuation, many passengers suffered minor physical injuries. Many passengers were traumatized by the incident." *Jack*, 854 F. Supp. at 657.

In making its determination as to the emotional damages that were legally recoverable, "the court interpreted Article 17 of the Warsaw Convention and the *Floyd* decision. The court evaluated several possible approaches to emotional distress in a Convention case, ranging from no recovery at all to recovery only for distress 'flowing from' the bodily injury." *Lloyd*, 291 F.3d at 509, quoting *Jack*, 854 F. Supp. at 665.

The *Jack* holding – now regarded as the "majority," "mainstream" view – is that "the emotional distress recoverable is limited to the distress about the physical impact or manifestation, i.e., the bodily injury. *Recovery is not allowed for the distress about the accident itself*." *Jack*, 854 F. Supp. at 668 (emphasis added). The emotional distress must flow from the bodily injury.

*Jack* "concluded the 'flowing from' approach was best, reasoning that it would prevent inequities among the passengers, such that 'the happenstance of getting scratched on the way down the evacuation slide [did] not enable one passenger to obtain a substantially greater recovery than that of an unscratched co-passenger who was equally terrified by the plane crash.'" *Lloyd*, 291 F.3d at 509-510 (quoting *Jack*, 854 F. Supp. at 668).

In *Ehrlich v. Am. Airlines, Inc*., 360 F.3d 366, 386-387 (2d Cir. 2004), the Second Circuit reached the same result as the *Jack* Court, although for somewhat different reasons. *Ehrlich* noted the district court's explanation, in *Longo v. Air Fr.*, 95 CV 0292 (BDP), 1996 U.S. Dist. LEXIS 21947, at *5 (S.D.N.Y. July 25, 1996), that, "allegations of mental distress that is unrelated to physical injury – i.e., mental distress that does not flow from physical injury . . . – are no different from the pure mental injury claims proscribed by *Floyd*." *Ehrlich*, 360 F.3d at 386-387 (quoting *Longo*, 1996 U.S. Dist. LEXIS 21947, at *5.

Quoting *Alvarez v. Am. Airlines, Inc*., 98 Civ. 1027 (MBM), 1999 U.S. Dist. LEXIS 13656, at *10-11 (S.D.N.Y. Aug. 30, 1999), the *Ehrlich* Court continued, "[c]onsequently, if Article 17 were read as if it encompassed liability for mental

injuries that were not caused by bodily injuries, 'plaintiffs would be able to skirt *Floyd*'s bar on recovery for purely psychological injuries simply by alleging that they have suffered some physical injury, no matter how slight or remote. As a practical matter, the substantive rule of law announced in *Floyd* would thus be converted into an easily satisfied pleading formality, and a back door would be impermissibly opened to recovery for purely psychological injuries.'" *Ehrlich*, 360 F.3d at 387.

Like the facts in *Jack*, the facts in *Alvarez* are apposite here. In *Alvarez*, the plaintiff was a passenger on an international flight departing from JFK. Almost immediately after it left the gate, the plane stopped. About two minutes later, a "strong gas smell" was discernible in the cabin and the plane filled rapidly with smoke. *Id*. at *2. When a crew member yelled, "get out," the passengers scrambled for the exits. *Id*. Plaintiff made his way down the emergency slide but, in the process, was impacted from behind and, in turn, bumped into another passenger. *Id*. Ultimately, plaintiff's heels struck the ground, he fell forward onto his knees, then backward onto his buttocks. *Id*. As a result of plaintiff's impact with the runway, he felt a "burning" sensation on his knees and buttocks and was bruised in both places. *Id*. at *3.

Plaintiff subsequently treated with his sister, a doctor, and she "concluded that the evacuation had left Alvarez 'emotionally disturbed' …" *Id*. A month later, plaintiff "began having nightmares and anxiety attacks" – "episodes … accompanied by screaming, profuse sweating, an elevated heart rate, and memories of the smoke-filled passenger cabin of the plane." *Id*.

The Court granted the airline's motion for summary judgment as to claims for psychological and emotional injuries not proximately caused by physical injuries suffered during the accident. *Id*. at *17. It did so because "in a case governed by Article 17, a plaintiff may recover compensation for psychological and emotional injuries *only to the extent that these injuries are proximately caused by his or her physical injuries*" and "[p]sychological and emotional injuries that are merely

accompanied by physical injuries are not compensable." *Id*. at *14-15 (emphasis added).

Plaintiff's consistent position has been that his distress was caused by the *accident* and *not* by physical injuries plaintiff says he sustained in the accident. These are what Dr. Williams describes as: being "basically bullied and harassed" (Williams Report on Bandary, p.13), "followed to the bathroom" (*id*.), "confirmed as 'a terrorist' by virtue of his Arabic name" (*id*.), and a response that was "nothing less than hysteria" as the "airline crew responded to their fears of Mr. Bandary, an ill, gay man traveling with an ill and elderly man" (*id.*).

Emotional distress caused by this conduct, even if true – and Delta surely denies it is – is precisely the sort of emotional distress that is *not compensable* under *Floyd*, the great weight of authority since *Floyd*, including the cases cited above, as well as this Court's pretrial rulings. In each instance, the purported emotional distress is alleged to have been caused by the Article 17 *accident*. Yet that is precisely what *is not* compensable under the treaty.

Plaintiff gains even less traction with claims that his emotional distress was caused by the following events:

- being "arrested and manhandled off the flight" (*id*.)

- having "his mental status … assessed at an Emergency Room" (*id*.)

- at the ER, having "nothing … done to assess the injuries Mr. Bandary had reportedly incurred during his arrest" (*id*. at p.14)

- at the ER, receiving "no assistance … for the fact that Mr. Bandary had soiled his pants with diarrhea" (*id*.)

- finding "himself on the no-fly list and [being] told he would never be allowed to fly again" (*id*.)

- being "accused of interfering with a flight crew due to his apparently feeble efforts not to be bullied due to his ethnic origin and sexual orientation on the airplane" (*id*.)

11

- "endur[ing] two years of probation as well as a court trial before being exonerated" (*id*.).

For at least two independent reasons, emotional distress allegedly caused by these events or happenings – as claimed by plaintiff and Dr. Williams – is not compensable under Article 17 of the Montreal Convention.

First, to the extent these events caused any emotional upset, again, the upset was not caused by a bodily injury. Second, if these events happened at all, they necessarily occurred after, and only in response to, the crew's report to, and request for, law enforcement, including the request for assistance from and intervention by Special Agent Nicholas Vahe who was aboard the aircraft, as well as law enforcement personnel on the ground at the Salt Lake City Airport.

As the Court already found, Delta is immunized (pursuant to the ATSA) for law enforcement's response to crew reports. Such immunity extends to the responses to these occurrences that are claimed, by Dr. Williams, to be sources of plaintiff's mental distress.

### C.     The Evidentiary Void with Respect to Economic Damages

In terms of economic damages, plaintiff has failed to produce any meaningful evidence. With respect to medical expenses, though plaintiff produced 1,704 pages in discovery, there was just a single sheet that if construed liberally in plaintiff's favor might pass for a medical bill. It is for $485.43. BAND000002. But even if it were fairly characterized as a "bill," what it shows is that the charge *was not paid*.

"California law is clear that unpaid medical bills or invoices are irrelevant to, and therefore inadmissible to show, past or future medical expenses and noneconomic damages, and they do not support expert opinion on the reasonable value of future medical expenses." *Bennett v. United States*, No. CV 16-4439-DMG (JEMx), 2018 U.S. Dist. LEXIS 226328, at *10 (C.D. Cal. Mar. 22, 2018) (citations omitted).

///

///

Because "[i]t is the party that claims such damages who bears the burden of showing that the expenses claimed are reasonable, necessary, and related to the event that caused injury (*id.*) (citing *Howell v. Hamilton Meats & Provisions, Inc.*, 52 Cal. 4th 541, 555, 129 Cal. Rptr. 3d 325 (2011)), and because plaintiff has not disclosed any witness who could competently prove what is required, there is no basis upon which plaintiff can recover past or future medical expenses.

In his Rule 26 report, forensic psychologist Martin Williams adverts to plaintiff's pre-flight *mental* health treatment as well as continued treatment following the flight. But he says nothing about the medical necessity of the past treatment, about the cost of that treatment, or regarding the reasonableness of the treatment costs (whatever they were). The same is true with respect to future care. All he offers is that plaintiff "will require weekly or twice-weekly psychotherapy along with monthly medication management for the rest of his life." To be sure, he doesn't say that treatment regimen is necessary to treat bodily injury-caused emotional upset. Nor does he so much as hazard a guess as to the reasonable cost of the treatment he proposes.

None of the rest of plaintiff's claimed economic damages are legally recoverable. They all relate to expenses incurred because of decisions made, and actions taken, by law enforcement. The bulk of the expenses relate to the cost of plaintiff's criminal defense – costs the Court found are not Delta's responsibility. The malicious prosecution claim was adjudicated adversely to plaintiff; and applying ATSA, the Court has found that Delta is not liable for the "later criminal prosecution of Plaintiff." Doc. 214 at p.3.

## IV.  POTENTIAL EVIDENTIARY ISSUES

### A.  Rebuttal Testimony of Patricia Adams

Patricia Adams was disclosed by plaintiff as a rebuttal expert – presumably to rebut the testimony of Delta's pilot expert, Captain John Cox and flight attendant expert, Mr. Robert Hemphill. At the outset of her report, Ms. Adams takes issue with

13

1  the analysis by these defense experts. Despite this, it seems that plaintiff intends to

2  call Ms. Adams in his case-in-chief. This is improper.

3      As explained in *Morrison v. Quest Diagnostics Inc.*, No. 2:14-cv-01207-RFB-

4  PAL, 2016 U.S. Dist. LEXIS 82518, at *4-5 (D. Nev. June 22, 2016) (emphasis

5  added), "[t]he purpose of rebuttal testimony is to 'explain, repel, counteract or

6  disprove evidence of an adverse party . . .' *United States v. Lamoreaux*, 422 F.3d 750,

7  755 (8th Cir. 2005) (internal quotations omitted). Or stated a bit differently, '[t]he

8  proper function of rebuttal evidence is to contradict, impeach or diffuse the impact of

9  evidence offered by an adverse party.' *Peals v. Terre Haute Police Department*, 535

10  F.3d 621, 630 (7th Cir. 2008). Rebuttal evidence may be introduced to challenge the

11  evidence or theory of an opponent, *but may not be used to establish a case-in-chief.*

12  *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006)."

13      As she is a rebuttal expert, Ms. Adams should be allowed to testify, if at all,

14  only *if and after* the witnesses she purports to rebut are called by Delta in its case.

15  "[S]upplemental or 'rebuttal' experts . . . cannot put forth their own theories; they

16  must restrict their testimony to attacking the theories offered by the adversary's

17  experts." *Bakst v. Cmty. Mem'l Health Sys.*, No. CV 09-08241 MMM (FFMx), 2011

18  U.S. Dist. LEXIS 163192, at *98 (C.D. Cal. Mar. 7, 2011) (quoting *International*

19  *Business Machines Corp. v. Fasco Indus., Inc.*, C-93-20326 RPA, 1995 U.S. Dist.

20  LEXIS 22533, 1995 WL 115421, *3 (N.D. Cal. Mar. 15, 1995)).

21      **C.   Testimony of Martin Williams, Ph.D.**

22      Plaintiff's forensic psychologist proposes to testify that he diagnosed plaintiff

23  with (a) Major Depressive Disorder, Severe, Recurrent Episode, With Anxious

24  Distress, In Partial Remission with Medication; and (b) Posttraumatic Stress Disorder

25  (PTSD). But the most he can say about the *source* of plaintiff's distress is that "It's

26  all part of the package of everything that happened to him led to his present

27  suffering." Deposition of Martin Williams, Ph.D., at 95:15-23.

28

Significantly for present purposes, Dr. Williams never evaluated any of plaintiff's alleged physical injuries or the sources thereof; and he repeatedly testified that he is unable to attribute plaintiff's emotional distress to his bodily injuries or any particular bodily injury. According to Dr. Williams, "I don't think things can be separated that way." *Id.* at 87:6-16.

Given the law that governs this case and which limits the emotional distress damages potentially available to the plaintiff, everything Dr. Williams proposes to say is both irrelevant and poses a substantial risk of juror confusion. In its motions in limine nos. 2 and 3, Delta challenged proposed testimony from Dr. Williams. The Court's order (Doc. 214 at pp.6-7) seems to accept the premise that Dr. Williams should not testify, but goes on to state that "[t]here is no reason why Plaintiff himself could not testify regarding his own personal physical, mental, and emotional injuries.

Delta submits that if Dr. Williams's testimony is not excluded in its entirety – and it should be – plaintiff should be required to make an offer of proof regarding what he can say to assist the trier of fact in deciding issue of relevance in this case.

## V.    CONCLUSION

Delta believes this discussion fairly addresses the limited scope of issues that remain for the trier of fact's consideration and resolution.

Dated:  September 11, 2021                    Respectfully submitted,

JETSTREAM LEGAL APC


By: /s/ *Richard G. Grotch*
       Richard G. Grotch
        -and-

Randolph S. Hicks
CODDINGTON, HICKS & DANFORTH

Attorneys for Defendant
Delta Air Lines, Inc.

15