Zein E. Obagi, Jr. (State Bar No. 264139)
Hee Kim, Of Counsel (State Bar No. 275010)
**OBAGI LAW GROUP, P.C.**
811 Wilshire Blvd | Suite 1709
Los Angeles, CA 90017
Telephone: (424) 284-2401
Facsimile: (424) 204-0719

Attorneys for Plaintiff
ATEF BANDARY

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ATEF BANDARY;<br><br>    Plaintiff,<br><br>    vs.<br><br>DELTA AIR LINES, INC.,<br><br>    Defendants. | Case No.: 5:17-cv-01065-DSF-AS<br><br>**PLAINTIFF'S TRIAL BRIEF**<br><br>[Fed. R. Civ. P. 1, 16]<br><br>**Date:** October 12, 2021<br>**Time:** 8:30 a.m.<br>**Courtroom:** 7D, First Street Courthouse<br><br>Complaint Filed: May 26, 2017<br>Trial Date: October 12, 2021 |

# TRIAL BRIEF

Plaintiff Atef Bandary hereby offers the following trial brief to support his claim for personal injury damages and resulting emotional distress against Defendant Delta Air Lines, Inc.

## I.     FACTUAL BACKGROUND

Mr. Bandary is 63-year-old senior American citizen.  He immigrated from Egypt, where he got his bachelors in accounting. Mr. Bandary is a gentle and decent individual with no criminal record. Mr. Bandary immigrated to the United States from an oppressive environment, where had endured demonization due to his lack of religiosity.  He came to the land of the free and brave, where the U.S. eventually granted him asylum so he could live here as a free gay man.  He strived to attain the American dream.  It was shattered when Delta injured him and treated him like a terrorist based on how he looked.

### A. <u>Bandary traveled from Argentina to Atlanta without incident</u>

On May 28, 2015, Mr. Bandary and his partner Gary Effertz, for whom Bandary serves as a caregiver due to Effertz's Parkinsons, had been traveling from Argentina back to his home in Palm Springs on a multi-stop international itinerary. Bandary and Effertz had <u>cleared security and Argentina</u> and had an unremarkable flight from that country to Atlanta.  Once he landed in Atlanta on the morning of May 29, 2015, Bandary and Effertz cleared U.S. customs. Thereafter, they proceeded through and **cleared security again** to get to their Salt Lake City-bound flight.

**B. Based on racially profiling, Delta led a concerted attack against Bandary for suspicion of terrorism on his Salt Lake City-bound flight.**

Weighing in at about 125 pounds, Mr. Bandary boarded Delta's Boeing 767 plane like everybody else, except he was happier. He had seen Evita's Tomb, a.k.a., the Recoleta Cemetery, in Buenos Aires, the day before. He was ecstatic. He and Effertz were not seated together, although they were both in the back of, as pictured:



After about ½ hour on the flight, after the *fasten-your-seatbelt* light was turned off, Mr. Bandary started walking around the cabin. He walked forward, and then when he reached the midsection, turned left through the flight attendant station, turned left again and walked back to where his friend was seated. After a little chat he continued his walk. He was not the only one; a pregnant woman was doing the same thing.

He frequented the restrooms because he suffers from irritable bowel syndrome which causes chronic diarrhea, and an enlarged prostate which causes frequent need to urinate. He also took the opportunity to walk when the person seated next to him pointed to let her out so she could use the restroom. He is a walker, and had a habit of walking well before this flight.

After complaining about Delta's flight attendant, Tammy Faucher's rudeness to him, Bandary got along well with another attendant named Carol Falten. She offered him a free sandwich which he accepted but could not eat much of due to his

recent dental procedures in Argentina. He offered to pay for it, and Ms. Falten declined. She said, "It's on us." Mr. Bandary was so happy that every time he saw Ms. Falten, he waved to her and smiled.

Eventually, he noticed the flight attendants staring at him, watching him, looking at him with suspicion. An off duty pilot, Tim Luznar, and Faucher, started following Mr. Bandary when he would get up. Mr. Luznar was significantly bigger than Mr. Bandary and, in fact, scared Mr. Bandary.

The flight was almost all Caucasian. He was the only darker-skinned person. He resolved not to let it bother him; he had endured weird looks for a long time because he was born cross-eyed, and nearly blind in his left eye after two eye surgeries. Being effeminate did not help.

### C. **Delta escalated aggression against Bandary, rather than peacefully investigate his doings, even though it had no reasonable basis for suspicion.**

With about *forty minutes* left in the flight, he felt diarrhea coming on. He had consumed some crackers and wine (2.5 6-oz. cups, dipping the crackers in the wine to soften them). But, this snack was not enough sustenance when he took his HIV medications. Those irritated his stomach. He got out of his seat and waited at the back of the airplane for a restroom to become vacant. There were about one or two people in line. When a bathroom became vacant, Bandary was on the verge of imminent defecation.

Right when Mr. Bandary thought he was going to be able to relieve his bowels, lead flight attendant Joy Rodemoyer, approached him and assertively asked him, "Are you Atef Bandary?" He replied, "yes". She responded, "Come with us." He became alarmed and said, "Can I use the bathroom first because I am having diarrhea". She said, "No". Bandary said, "Please, I might have an accident." Then, 3-4 flight attendants surrounded him, imprisoning him there on that flight, without due process or even an investigation.

In fact, what investigation they had done cleared Bandary, but Lead Rodemoyer decided to approach him with hostility and confine him to his seat regardless.

### D. A crew of 4 flight attendants injured Mr. Bandary, and caused him severe emotional distress.

As she encroached on him, he walked backward until he hit the back wall of the plane, **and fell down incurring his first physical injury. At around this time, he defecated in his own pants; his second physical injury.** All the flight attendants in the back surrounded him, and even passengers in the back surrounded him and the whole area, standing. He stayed on the floor for 3 to 4 minutes with nobody helping him up.

Mr. Bandary was terrified. He heard the flight attendants calling him a terrorist, he exclaimed, "I am not a terrorist!" from the floor. He hollered for the help of his friend, Gary. The crew eventually got Bandary back on his feet, and Lead Rodemoyer put "tough-cuffs", handcuffs for airplane passengers, on him.

By her admission under oath, Rodemoyer put the cuffs on too tight on one wrist. They scraped his skin. Mr. Bandary ended up with scrapes on his arms and wrists; his third physical injury. Delta never left him return to the restroom, falsely imprisoning him in the back of the plane; his fourth physical injury. He ended up with defecation on his person for the next 12-16 hours.

While he had cuffs on, his pants fell down and Mr. Bandary's genitalia was totally exposed since – due to clean clothing constraints back in Argentina – he was not wearing underwear on that flight. This is yet a fifth instance of physical injury.

### E. The similarity of these physical injuries to his past emotional trauma caused Mr. Bandary extreme emotional distress.

Delta's flight attendants will testify that Mr. Bandary was screaming from the floor, yelling that he did nothing wrong and that he was not a terrorists, even once they had him in cuffs and picked up off the floor. Ms. Rodemoyer questioned his sanity, until she realized he was sane when he calmly asked her to pull up his pants.

When Mr. Bandary was surrounded by individuals in close density with poor visibility, and confined for doing nothing wrong, jarred his memory of a much earlier, severely traumatic part of his life in Kuwaiti police custody. At trial, Defendants will be shown to be liable on the Montreal Convention for his physical injuries and resulting emotional distress, and grossly negligent for their handling of the situation.

While his criminal trial culminated in catharsis and vindication thanks to a unanimous not guilty verdict on federal criminal charges, Mr. Bandary is yet to get any vindication or recognition for the wrongs done to him by Delta aboard its 767.

## II. DELTA IS STRICTLY LIABLE FOR BANDARY'S PERSONAL INJURIES AND PROXIMATELY RESULTING EMOTIONAL DISTRESS

### A. An accident occurred aboard Mr. Bandary's flight

The Court has already ruled that Ms. Bandary was subject to an accident aboard Delta Flight 1105 from Atlanta to Salt Lake City. "Because the flight in question was a leg in Plaintiff's international itinerary, the Court previously found that the Montreal Convention applies to claims for injuries suffered onboard the flight." (Dkt. 153:4). "The Montreal Convention makes an air carrier liable for death or bodily injury where an "accident" caused the death or bodily injury 'on board the aircraft or in the course of any of the operations of embarking or disembarking.' Montreal Convention, Article 17." (*Id.* at 5). "The United States Supreme Court has defined an 'accident' under the Montreal Convention – and its predecessor, the Warsaw Convention – to be an "unexpected or unusual event or happening that is external to the passenger' and not 'the passenger's own internal reaction to the usual, normal, and expected operation of the aircraft.' Olympic Airways v. Husain, 540 U.S. 644, 646 (2004) (quoting Air France v. Saks, 470 U.S. 392, 405-406 (1985)). (*Id.*)

The Court found that an "accident" within the meaning of Art. 20, occurred aboard the subject flight:

> Neither party disputes – or could dispute – that the events in question were "unexpected or unusual." It is undisputed that a shouting match and physical struggle took place onboard between Plaintiff and the flight attendants, and that Plaintiff was handcuffed and taken into custody. Any injuries that Plaintiff may have incurred were not due to events that take place in the normal course of air travel.

(Dkt. 153 at 7).

### B. Plaintiff sustained a series of physical injuries

Mr. Bandary sustained multiple physical injuries. When first confronted by flight attendants who would not let him use the restroom before returning to his seat, they backed him up into the rear of the plane until he hit the back wall and fell. He remained on the floor, terrified, for several minutes with nobody doing anything to help him.

In his second injury, he defecated on himself at the instant of falling down. Then, once standing up again, Flight Attendant Joy Rodemoyer put the cuffs on too tight on his wrist. They scraped his skin and caused him to bleed. In other words, the cuffs not only injured him for the third time, but they wounded him too.

Then, while standing and cuffed, because he could not pull them up since his hands were restrained, Mr. Bandary's pants fell down exposing his genitals. Then, Mr. Bandary was taken back to his seat, where he had to sit with his arms behind his back, causing great physical discomfort for the rest of the flight.

The term "bodily injury" in the Montreal Convention includes those offensive physical contacts that do not cause wounds. A passenger may recover damages when his "injury is caused by an unexpected or unusual event or happening that is external to the passenger." *Air France v. Saks*, 470 U.S. 392, 405 (1985). This definition is to "be flexibly applied after assessment of all the circumstances surrounding a passenger's injuries." *Id*. "In cases where there is contradictory evidence, it is for the trier of fact to decide **whether an 'accident' as here defined caused the passenger's**

**injury.**" *Id*. (Emphasis added). Courts have further clarified this rule, noting that "an injury resulting from routine procedures in the operation of an aircraft or airline can be an 'accident' if those procedures or operations are carried out in an unreasonable manner." *Fishman by Fishman v. Delta Air Lines, Inc.*, 132 F.3d 138 (2d. Cir. 1998).

    (c) The Article 17 drafting history is consistent with this Court's understanding of the preemptive effect of the Convention. Although a preliminary draft of the Convention made carriers liable "'in the case of death, wounding, or any other bodily injury suffered by a traveler,'" [] the later draft that prescribed what is now Article 17 narrowed airline liability to encompass only bodily injury caused by an "accident."

*El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng* (1999) 525 U.S. 155, 158.

    The Oxford English Dictionary defines **'injury'** …as **"[h]urt or loss caused to or sustained by a person or thing; harm, detriment, damage."** *Estate of Kalahasthi v. U.S.* (C.D. Cal. 2008) 630 F.Supp.2d 1120, 1136 (analyzing statutory income tax of members of the Armed Forces, astronauts in the phrase, "wounds or injury" in 26 U.S.C. § 692.) [1]. **"Bodily injury means just what it says—harm or hurt to the body."** *People v. Thoma* (2007) 150 Cal.App.4th 1096, 1099 (analyzing criminal liability under Cal. Veh. Code § 23153).

    "[T]he term 'injury' in the phrase 'wound or injury,' suggests a bodily injury where the skin is not broken, but does not suggest that mental injuries are included, such as a heart attack or stroke brought on by emotional shock." *Estate of Kalahasthi v. U.S.*, (C.D. Cal. 2008) 630 F.Supp.2d 1120, 1135.

    There is no contact requirement for "bodily injury."

    Finally, defendant urges the court to adopt a contact rule in the interpretation of bodily injury, i. e., that any bodily injury sustained

---

[1] In contrast, "[t]he Oxford English Dictionary defines wound as "[a] hurt caused by the laceration or separation of the tissues of the body by a hard or sharp instrument, a bullet, etc.; an external injury."55 Other dictionaries also define the term wound in a way that contemplates a laceration or breaking of the skin. *Estate of Kalahasthi v. U.S* (C.D. Cal. 2008) 630 F.Supp.2d 1120, 1136.

must be the result of physical contact between the body and another object. However, the defendant has failed to adduce any evidence in support of this construction. Brief reflection allows one to pose many instances in which a bodily injury may result without any physical contact whatsoever. Such a sterile interpretation would surely do violence to the intent of the Warsaw framers.

*Burnett v. Trans World Airlines, Inc.*, (D.N.M. 1973) 368 F. Supp. 1152, 1158.

While a limited amount of "jostling" or physical contact with other passengers may be expected in air travel, being "trampled," **no less than being knocked over or having a passenger fall on top of one, describes an out-of-the-ordinary and unexpected event."** *Arellano v. American Airlines, Inc.* (S.D. Fla. 2014) 69 F.Supp.3d 1345, 1351.

Here, it is clear that *injury* is distinct from the term *wound*, in that there need not be any lasting evidence of the trauma to the body.  A bodily injury merely means that "hurt" or pain was inflicted on the body.  In contrast, a wound is "hurt caused by the laceration or separation of the tissues of the body."  It is clear that in Art. 17, the drafters intended for bodily injury to encompass more types of harm rather than merely bodily wounds.  Otherwise, they would have left the term wounds in, and omitted bodily injury.

Plaintiff thus posits that he can recover damages for all of the incidents of bodily injury he suffered aboard the flight from the moment the "accident started": falling to the ground, defecating in his own pants, being pulled up, having his pants drop to the ground, and then cuffed very tightly and seated in his seat with his tight cuffs behind his back.  Any questions surrounding whether, for example, defecating oneself should qualify as a bodily injury, should be resolved by the trier of fact determining whether or not she should be compensated for them.

### C. **Delta is liable for emotional distress resulting from his physical injuries**

Mr. Bandary can present evidence of his emotional distress resulting or stemming from his bodily injuries. This Court has already found that Article 17's language, stating recovery can be had for "damage sustained in case of death or bodily injury," means that Plaintiff can only recover for emotional distress damages stemming from his physical injuries. (Dkt. 214, at 3-4).

At trial, Mr. Bandary will prove that his treatment on that airplane – encircling by the flight attendants, cornering on the plane and causing him to the ground are precisely the type of oppressive treatment he escaped from in Egypt for the land of the free, and that to hear that they were doing this to him because he "look[ed] like a terrorist" merely because of his skin color, traumatizes him to this day. Having his pants dropped to the ground with nobody doing anything to cover up his gentiles was extremely embarrassing and degrading, since he was felt like a toddler who could not help himself since he was being restrained.

The exertion of tightness on the cuffs, and strapping them as hard as they did, exemplified the hatred with which this flight crew was acting towards him, and the degree to which they had prejudicially categorized him as a terrorist due to his skin color. Their injurious conduct combined with the lack of rationale for occasioning caused Mr. Bandary to suffer significant, longstanding emotional distress stemming from the injurious conduct. Plaintiff's psychologist, Dr. Martin Williams, has found that Mr. Bandary suffered PTSD as a result of, *inter alia*, the injurious incidents on the subject Delta flight.

### D. **Delta has no Article 20 defense**

"Article 20 wholly or partially exonerates air carriers from liability for damages where "the  negligence or wrongful act or omission of the person claiming compensation . . . caused or contributed to the damage." (Dkt. 153 at 6).

The Ninth Circuit is "mindful … that flight commanders must be given wide latitude in making decisions to preserve safety and orderly conduct aboard an aircraft

in flight. But passengers also have a legitimate interest in being treated fairly and with dignity; they are, after all, captives of the airline for the duration of the flight." *Eid v. Alaska Airlines, Inc.*, 621 F.3d 858, 875 (9th Cir. 2010).

Delta will not be able to this plaintiff who suffered from a medical condition that caused him to frequently need to use the restroom and who otherwise preferred to be stretching his legs and walking rather than staying seated on a long flight itinerary did anything to warrant the injurious conduct in which Delta engaged. He was, after all, on a very long international itinerary.

After the cockpit cleared Mr. Bandary, indicating that was not on any wanted or no fly list, he should have been left alone. Alternatively, Delta could have asked him about why he was up so much. But that is not the reasonable conduct that happened. Instead, Lead FA Joy Rodemoyer decided to confront him when, according to her own colleague, no further interaction with Bandary was necessary. Her unwarranted rampage driven by her animus for people that look like Mr. Bandary caused an injurious escalation for which Mr. Bandary seeks compensation.

### III. CONCLUSION

Delta is strictly liable to Mr. Bandary for the bodily injuries it inflicted on him and emotional distress damages arising therefrom. To the extent any questions exist about whether contact with Mr. Bandary inflicted a bodily injury, that determination is for a trier-of-fact to make. Likewise, finding a causal connection between Mr. Bandary's emotional distress and the physical injuries he sustained also remain for the jury to determine, as well as the amount of damages that should be awarded for any of those eligible emotional distress damages.

Dated: October 4, 2021

**OBAGI LAW GROUP, P.C.**

By: */s/ Zein E. Obagi, Jr.*
Zein E. Obagi, Jr.
Attorneys for Plaintiff
ATEF BANDARY