Timothy J. Ryan, Esq. – SBN 99542
The Ryan Law Group
400 Capitol Mall, Suite 2540
Sacramento, CA 95814
Tel. (916) 924-1912
Fax. (916) 923-3872
Email. tryan@ryanlg.com

Richard G. Grotch, Esq. – SBN 127713
*Jetstream Legal APC*
80 Cabrillo Highway North, Suite Q-325
Half Moon Bay, CA 94019
Tel. 415.961.1691
Email. rgrotch@jetstreamlegal.com

**ATTORNEYS FOR** Defendant
Delta Air Lines, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| ATEF BANDARY,<br><br>         Plaintiff,<br><br>vs.<br><br>DELTA AIR LINES, Inc., a corporation;<br><br>         Defendant. | Case No. 5:17-cv-1065 DSF AS<br><br>**UPDATED** MEMORANDUM OF CONTENTIONS OF FACT AND LAW OF DEFENDANT DELTA AIR LINES, INC.<br><br>Trial:  October 12, 2021<br>Courtroom:   7D<br><br>Honorable Dale S. Fischer<br>United States District Judge |

Defendant Delta Air Lines, Inc. ("Delta"), pursuant to the Court's Order Re: Jury Trial (ECF Doc. 80), L.R. 16-4, and the Court's September 13, 2021 request for updated pretrial documents reflective of the Court's pretrial orders, including orders on motions in limine, respectfully submits its **Updated** Memorandum of Contentions of Fact and Law.

///

///

///

1

## I. CLAIMS AND DEFENSES

### A. *Summary statement of the claims plaintiff has pleaded and plans to pursue.*

Plaintiff has one remaining claim for relief. As alleged in the operative third amended complaint ("TAC") (ECF Doc. 53), it is a claim for "Bodily Injury under the Montreal Convention."[1] Article 17(1) authorizes such a claim.

### B. *The elements of a claim for bodily injury under the Montreal Convention.*

Under Article 17(1), plaintiff must prove (1) an "accident"[2] (2) that proximately caused a bodily injury (3) aboard the aircraft or during the course of embarking or disembarking. See *Kruger v. United Air Lines, Inc.*, 481 F. Supp. 2d 1005, 1009 (N.D. Cal. 2007); Montreal Convention, Art. 17(1). Potentially compensable damages are those sustained as a result of the bodily injury (not the "accident"). *Jack v. Trans World Airlines*, 854 F. Supp. 654, 667 (N.D. Cal. 1994).

This Court has found there was an "accident" because "a shouting match and physical struggle took place onboard" the flight, and such events on commercial flights are unusual.[3] ECF Doc. 153, p.7. Where an "accident" has been established,

---

[1] The treaty commonly known as the "Montreal Convention" is formally entitled the Convention for the Unification of Certain Rules for International Carriage by Air, *opened for signature* May 28, 1999, ICAO Doc. 9740 (entered into force Nov. 4, 2003), *reprinted in* S. Treaty Doc. No. 106-45.

[2] An "accident" for the purposes of the Montreal Convention is defined as "an unexpected or unusual event or happening that is external to the passenger." See *Air France v. Saks*, 470 U.S. 392, 405, 105 S. Ct. 1338, 84 L. Ed. 2d 289 (1985).

[3] Although the Court disagreed, Delta's position is that a shouting match and physical struggle – and being turned over to law enforcement and restrained – are not unexpected events on an airplane once a passenger screams at the top of his lungs, removes his clothes, demonstrates a lack of self-control and otherwise acts as the plaintiff did on this flight. See, e.g., *Cush v. BWIA Int'l Airways Ltd.*, 175 F. Supp. 2d 483, 488 (E.D.N.Y. 2001) (passenger who caused a disturbance because he refused to disembark at the request of immigration officials, sought relief arguing the altercation that he, himself, instigated was an unusual occurrence. "Were relief available to a disruptive passenger based on the proposition that his forcible removal

(Footnote continues on next page.)

plaintiff must nevertheless prove these additional elements: (a) it proximately caused (b) bodily injury. See *Dizon v. Asiana Airlines, Inc.*, 240 F. Supp. 3d 1036, 1045 (C.D. Cal. 2017) (granting summary judgment to defendant air carrier because plaintiff did not establish accident was proximate cause of injuries); *Kruger*, 481 F. Supp. 2d at 1009 (a passenger-plaintiff may not recover for any emotional distress experienced during the flight except distress that arose out of the passenger's bodily injuries; see also ECF Doc. 214 at p.2 (same)). Plaintiff must also prove the damages he incurred as a result of the bodily injury. *Jack*, 854 F. Supp. at 667.

**C.  Brief description of the key evidence in opposition to Plaintiff's claim.**

1. Testimony of Joy Rodemoyer (Delta lead flight attendant);
2. Testimony of Deboni Black (Delta flight attendant);
3. Testimony of Lucy Recupero Cook (Delta flight attendant);
4. Testimony of Tammy Faucher (Delta flight attendant);
5. Testimony of Carol Falten (Delta flight attendant);
6. Testimony of Nicholas Vahe (passenger/U.S. Treasury Department Special Agent);
8. Testimony of Timothy Luznar (passenger/JetBlue captain);
9. Expert testimony of Robert Hemphill (retired flight attendant).

To avoid a cumulative presentation of evidence, Delta will be judicious about and selective in terms of which of these witnesses it will call to testify.

**D.  Summary statement of the affirmative defenses Defendant has pleaded and plans to pursue.**

Delta pleaded the following defenses it plans to pursue:

---

(Footnote continued from previous page.)
was 'unusual' or 'unexpected,' courts would reward disruptive passengers for their disruptions.")

(a) Plaintiff's alleged damages were caused or contributed to by plaintiff's own negligence or other wrongful acts or omissions and for that reason Delta is entitled to be wholly or partly exonerated from liability in proportion to his fault, in accordance with Article 20 of the Montreal Convention;

(b) Delta's liability, if any, with respect to plaintiff's alleged damages is further limited or excluded in accordance with its conditions of carriage, conditions of contract and tariffs; because plaintiff did not comply with Delta's contract of carriage, conditions of carriage, conditions of contract and tariffs; and did not comply with the notice provisions pertaining to a claim for damaged baggage in accordance with Article 31 of the Montreal Convention;

(c) Plaintiff's claims and alleged damages are barred or limited by federal law, including, the Federal Aviation Act of 1958, as amended (49 U.S.C. § 40101, *et seq.*), and, specifically, by the broad immunity afforded by the Aviation and Transportation Security Act, Pub. L. No. 107-71, 115 Stat. 597, 49 U.S.C. § 44941.

Delta has waived its defense under Article 21 of the Convention.

### E. Brief description of key evidence relied on in support of each affirmative defense.

*1. Plaintiff's own negligence or other wrongful acts.*

Based upon the court's rulings to date, Delta expects plaintiff's admissible evidence to be extremely limited and likely insufficient to establish his prima facie case. If that proves true, Delta would not need to prove its affirmative defenses. However, if Delta must prove the defense of plaintiff's own negligence or wrongful acts or omissions, Delta will be discerning in eliciting sufficient testimony from flight attendant and passenger witnesses to show plaintiff's conduct was petulant, strange, and made passengers uncomfortable and suspicious. When the lead flight attendant asked the simple question, "Hello. Are you Atef Bandary?," plaintiff immediately exploded, "You can't do this to me. I haven't done anything wrong." The evidence

will show that if plaintiff proves he sustained any legally compensable injury or damage – which is not anticipated – the injury or damage was the result of his own negligent and wrongful actions.

> *2.  For a claim relating to his allegedly damaged checked bag, plaintiff failed to comply the provisions of the Montreal Convention that require timely written notice to Delta.*

To the extent plaintiff seeks damages for damage to his one checked bag, that claim is not legally viable. Article 31 of the Montreal Convention mandates timely notice of complaints about baggage. Article 31(1) states, in pertinent part that, "Receipt by the person entitled to delivery of checked baggage or cargo without complaint is prima facie evidence that the same has been delivered in good condition and in accordance with the document of carriage."

Article 31(2) requires, in pertinent part, that "In the case of damage, the person entitled to delivery must complain to the carrier forthwith after the discovery of the damage, and, at the latest, within seven days from the date of receipt in the case of checked baggage."

Article 31(3) specifies that "Every complaint must be made in writing and given or dispatched within the times aforesaid." Finally, Article 31(4) provides that "If no complaint is made within the times aforesaid, no action shall lie against the carrier, save in the case of fraud on its part." To the extent plaintiff complains about damage to his checked bag, he failed to comply with any of the requirements of Article 31. (Similar provisions requiring timely written notice of damage to baggage are part of the applicable Delta contract of carriage.)

The evidence from plaintiff himself is that he did not comply with these legal requirements.

///

///

///

> 3. *Immunity afforded by the Aviation and Transportation Security Act, 49 U.S.C. § 44941.*

Delta's legal immunity for reports to law enforcement and for actions taken by law enforcement in response commenced at the point that Ms. Rodemoyer reported to the pilots regarding plaintiff's suspicious conduct and a perceived threat to safety, and the pilots reminded her of the presence of a law enforcement officer, Special Agent Vahe, aboard the flight. At the latest, ATSA immunity was triggered when Ms. Rodemoyer engaged Special Agent Vahe to address the problems with plaintiff. In either event, this was before the "confrontation between Plaintiff and the flight attendant employees of Defendant while in flight," i.e., before the Article 17 "accident."

**F.** *Identification of any anticipated evidentiary issues, together with the party's position on those issues.*

The initially anticipated evidentiary issues were addressed in motions in limine and resolved through the Court's rulings. In summary, the results of these rulings are as follows:

(a) The breadth and scope of the evidence in this case must now framed by the settled proposition that "[r]ecovery can be had for 'damage sustained in case of death or bodily injury.' In this context, this means the damage suffered due to the death or bodily injury. Nothing in this language of the treaty suggests that any bodily injury suffered in the course of an accident, no matter how slight, opens up recovery for all mental and emotional distress, no matter how unrelated to the bodily injury. This would lead to absurd results surely not intended by the drafters of Article 17." ECF Doc. 214 at p.3.

(b) The admissible evidence is further cabined by the Court's determinations about 49 USC § 44941(a). *First*, it applies to all of the claims. *Id.* at p.5. *Second*, it affords Delta a broad immunity for any harm that might have been suffered stemming from a report to law enforcement. *Id. Third*, implicit in immunity

for making reports to law enforcement is immunity from liability for whatever law enforcement might do with those reports; otherwise, immunity would be largely meaningless. *Id.* at p.6.

   (c) Plaintiff may testify regarding his own personal physical, mental, and emotional injuries. *Id.* at p.7.

   (d) Testimony about the credibility of witnesses is improper and will not be permitted. *Id.*

   (e) Sensitive security information ("SSI") may be admissible to show that Mr. Bandary's conduct was not the whole or partial source of his injuries on May 29, 2015. ECF Doc. 239 at pp.1-2; it may not be used to substantiate the degree, nature and source of his deep emotional distress following the incidents that occurred on Flight 1105, as opposed to any events that occurred subsequent to the flight. *Id.* In the absence of evidence that indication that plaintiff was aware of any of the SSI-containing procedures or standards at the time of the incident, and therefore the crew's compliance or non-compliance with those standards would not have affected plaintiff's reactions. *Id.* at pp.2-3.

   However, Delta also anticipates there may be additional evidentiary issues to be resolved by the Court. These involve:

   (a) The potential necessity of an order excluding all evidence, argument and interrogation regarding a criminal investigation, prosecution, trial, or verdict relating to plaintiff arising out of any of the events that occurred on May 29, 2015 as plaintiff traveled from Buenos Aires to Salt Lake City. Delta believes the Court's orders regarding the summary judgment motions with respect to the malicious prosecution cause of action and on immunity under 49 USC § 44941(a), already exclude all such evidence and argument; however, the exhibits plaintiff proposes to proffer suggest he is not in agreement with that proposition;

///

(b) Statements by plaintiff reveal his intention to turn this Montreal Convention case into a discrimination case. There are several reasons why this is improper and impermissible. First, the Court previously ruled that this is not a discrimination case. The first amended complaint contained a claim under Section 1981 (ECF Doc. 9, ¶¶ 99-116) but the Court granted Delta's motion to dismiss that claim. ECF Doc. 30. The operative, third amended complaint, properly and in accordance with the Court's prior ruling, does not include a discrimination claim.

Moreover, there is no relevance to allegations of discrimination and any possible relevance would be significantly eclipsed by the prejudicial impact of the evidence. There is no relevance because plaintiff's only claim, under Article 17 of the Montreal Convention, is a strict liability, no fault claim. Once it is determined there was an "accident" – as the Court did – all that remains is for plaintiff to prove the accident caused a bodily injury and that the bodily injury caused him to sustain damage. Attempts to transform this into a discrimination case would be particularly prejudicial because plaintiff already benefits from Article 17's pro-passenger strict liability regime and he should not then be permitted to "pile on" with irrelevant evidence of what plaintiff imagines (and he can only speculate) were Delta's motives (i.e., to discriminate against him). Any such irrelevant, time consuming, confusing, and highly prejudicial evidence is inadmissible under Rules 402 and 403 of the Fedaeral Rules of Evidence.

(c) The potential need for an order that would allow the use of prior testimony in appropriate circumstances without revealing that the testimony was given in a prior criminal proceeding.

**G.** ***Identification of any issues of law, such as the proper interpretation of a governing statute, which are germane to the case, together with the party's position on those issues.***

(a) Article 17(1) of the Montreal Convention permits compensation only for damages that relate to a bodily injury proximately caused by an "accident" as

defined for purposes of the treaty; compensation is available for mental and emotional upset *only* to the extent it is caused by and flows from the proven, accident-caused bodily injury.

(b) The Aviation and Transportation Security Act, 49 U.S.C. § 44941, immunizes Delta for all reports of suspicious transactions involving the plaintiff and for "[j]udgment calls about how to act on such reports [as those] are the province of the TSA and other law enforcement officers." See *Air Wis. Airlines Corp. v. Hoeper*, 571 U.S. 237, 134 S.Ct. 852 (2014); *Baez v. JetBlue Airways Corp.*, 793 F.3d 269, 276-277 (2d Cir. 2015).

As the Supreme Court explained in *Hoeper*, 571 U.S. at 249, 134 S. Ct. at 862, Congress wanted to ensure that air carriers and their employees would not hesitate to provide law enforcement with the information it needed. (Even the title of the statutory section that contains the immunity provision shows that this was the purpose of the immunity provision – "encouraging airline employees to report suspicious activities." ATSA § 125, 115 Stat. 631 (capitalization and boldface type omitted). The Supreme Court noted, too, that the immunity provision should be construed so the burden of assessing and investigating possible threats is shifted from the airline to law enforcement, rather than "the pre-ATSA state of affairs, in which air carriers bore the responsibility to investigate and verify potential threats." *Id.*

Again, Delta's immunity under ATSA was triggered when the lead flight attendant, Ms. Rodemoyer called the cockpit, reported Mr. Bandary's suspicious, uncontrolled and threatening behavior, and was reminded there was a law enforcement officer aboard. At the very latest, the immunity was triggered when Ms. Rodemoyer approached Special Agent Vahe at his seat and engaged him, in his law enforcement role, to deal with the plaintiff.

///

///

**H.   *Bifurcation of Issues.***

The parties have not requested, and there is no need for, bifurcation of issues in this case.

**I.   *Jury Trial.***

All issues are triable to a jury as a matter of right. Plaintiff (ECF Doc. 1) and Delta (ECF Doc. 11) timely demanded a trial by jury.

**J.   *Attorneys' Fees.***

Attorneys' fees are not recoverable in this case.

**K.   *Abandonment of Issues.***

Other than its affirmative defense under Article 21 of the Montreal Convention, Delta does not abandon any issues.

Dated: October 5, 2021                                        THE RYAN LAW GROUP

/s/ Timothy J. Ryan

By: _____
       Timothy J. Ryan

JETSTREAM LEGAL APC
Richard G. Grotch

Attorneys for Defendant
Delta Air Lines, Inc.