Timothy J. Ryan, Esq. – SBN 99542
The Ryan Law Group
400 Capitol Mall, Suite 2540
Sacramento, CA 95814
Tel. (916) 924-1912
Fax. (916) 923-3872
Email. tryan@ryanlg.com

Richard G. Grotch, Esq. – SBN 127713
*Jetstream Legal APC*
80 Cabrillo Highway North, Suite Q-325
Half Moon Bay, CA 94019
Tel. 415.961.1691
Email. rgrotch@jetstreamlegal.com

**ATTORNEYS FOR** Defendant
Delta Air Lines, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| ATEF BANDARY,<br><br>          Plaintiff,<br><br>vs.<br><br>DELTA AIR LINES, Inc., a corporation;<br><br>          Defendant. | Case No. 5:17-cv-1065 DSF AS<br><br>DEFENDANT DELTA AIR LINES, INC.'S BRIEF REGARDING ENTRY OF JUDGMENT IN ACCORDANCE WITH THE EVIDENCE-SUPPORTED VERDICT FORM [ECF DOC. 300]<br><br>Honorable Dale S. Fischer<br>United States District Judge |

# TABLE OF CONTENTS

I. Introduction ..................................................................................1

II. Procedural Posture..........................................................................1

    A.    Narrowing the Issues Through Pre-trial Proceedings .......................1

    B.    Jury Deliberations .........................................................................3

    C.    The Consistent, Evidence-Supported Verdict..................................4

    D.    The Inexplicable, Inconsistent and Unfounded Second "Verdict"........................................................................6

III. Legal Argument..............................................................................8

    A.    The Jury's Initial, Consistent, Evidence-Based Verdict Must be Respected ..............................................................8

    B.    The Jury's Second, Inexplicable Verdict Must be Rejected...............................................................................11

    C.    There is Neither a Legal Basis nor a Necessity for a New Trial ...............................................................................12

    D.    The Initial Verdict Form is Consistent with the Weight of the Evidence and Should Serve as the Basis for the Judgment..........................................................................13

IV. Conclusion...................................................................................15

i

Defendant Delta Air Lines, Inc.'s Brief Re Entry of Judgment in Accordance With Evidence-Supported Verdict
Case No: 5:17-cv-1065 DSF AS

# TABLE OF AUTHORITIES

**Cases**

*Air Wisconsin Airlines Corp. v. Hoeper*
    571 U.S. 237, 134 S. Ct. 852 (2014) .......................................................13

*Estate of Casillas v. City of Fresno*
    No. 1:16-CV-1042 AWI-SAB,
    2019 U.S. Dist. LEXIS 111722 (E.D. Cal. July 2, 2019) .................. 10-11

*Floyd v. Laws*
    929 F.2d 1390 (9th Cir. 1991)............................................................. 8-11

*Franks v. Kirk*
    804 F. App'x 610 (9th Cir. 2020)..............................................................10

*Gallick v. B & O R.R.*
    372 U.S. 108, 83 S. Ct. 659 (1963) ................................................... 8-9, 11

*Kruger v. United Air Lines, Inc.*
    481 F. Supp. 2d 1005 (N.D. Cal. 2007)......................................................1

*Los Angeles Nut House v. Holiday Hardware Corp.*
    825 F.2d 1351 (9th Cir. 1987)..................................................................12

*Roy v. Volkswagen of Am., Inc.*
    896 F.2d 1174 (9th Cir. 1990)..................................................................12

*Tanno v. S.S. President Madison Ves*
    830 F.2d 991 (9th Cir. 1987).....................................................................9

*White v. Ford Motor Co.*
    312 F.3d 998 (9th Cir. 2002)....................................................................12

*White v. Grinfas*
    809 F.2d 1157 (5th Cir. 1987)...................................................................9

*Zhang v. Am. Gem Seafoods, Inc.*
    339 F.3d 1020 (9th Cir. 2003)..................................................................12

ii

Defendant Delta Air Lines, Inc.'s Brief Re Entry of Judgment in Accordance With Evidence-Supported Verdict
Case No: 5:17-cv-1065 DSF AS

**Treaties**

Convention for the Unification of Certain Rules for
International Carriage by Air (Montreal, 28 May 1999) ............................. 1, 2, 16

**Statutes**

49 U.S.C. § 44941 ................................................................................... *passim.*

**Rules**

Fed. R. Civ. Proc. Rule 59 ................................................................................. 12

iii

Defendant Delta Air Lines, Inc.'s Brief Re Entry of Judgment in Accordance With Evidence-Supported Verdict
Case No: 5:17-cv-1065 DSF AS

As ordered by the Court on October 15, 2021 (ECF Doc. 290), defendant Delta Air Lines, Inc. ("Delta") respectfully submits this brief regarding entry of judgment in accordance with the initially rendered jury verdict (ECF Doc. 300).

## I. INTRODUCTION

When this trial concluded, the jury returned a verdict form that is both internally consistent and supported by the evidence. Under Supreme Court and Ninth Circuit precedent, that is fully sufficient for the Court to enter judgment based on that verdict. The unnecessary information contained in the verdict form – answers to three of the nine questions – must be disregarded. So too should the incoherent, inconsistent, and inexplicable verdict form subsequently returned by the jury. ECF Doc. 302. All that is surplusage and under settled law it must be disregarded. Given the validity of the first verdict form, and the absence of circumstances otherwise warranting it, there is simply no basis for a new trial. The Court should enter judgment based on the verdict form first returned by the jury (ECF Doc. 300).

## II. PROCEDURAL POSTURE

### A. Narrowing the Issues Through Pre-trial Proceedings

On October 12, 2021, a panel of eight jurors was seated and the trial in this case began. By the time the trial commenced, more than four years and four months after the complaint was filed, several significant legal issues had been resolved through pretrial motions and the issues in the case were substantially narrowed. Plaintiff's sole remaining claim was one seeking compensatory damages for bodily injury in accordance with Article 17 of the Montreal Convention. Under Article 17(1), a plaintiff must prove (1) an "accident" (2) that proximately caused a bodily injury (3) aboard the aircraft or during the course of embarking or disembarking. *See Kruger v. United Air Lines, Inc.*, 481 F. Supp. 2d 1005, 1009 (N.D. Cal. 2007); Montreal Convention, Art. 17(1).

1

Defendant Delta Air Lines, Inc.'s Brief Re Entry of Judgment in Accordance With Evidence-Supported Verdict
Case No: 5:17-cv-1065 DSF AS

Prior to trial, the Court found that an "accident" occurred on the flight. ECF Doc. 153 at p.5. The Court found there was "a shouting match and physical struggle [that] took place onboard between Plaintiff and the flight attendants" and "Plaintiff [being] handcuffed and taken into custody." *Id.* at p.7. As such, it remained for plaintiff to prove he sustained a bodily injury caused by the accident. However, in pretrial proceedings, the Court also acknowledged that under applicable law, there were limitations on the damages plaintiff could seek and on Delta's potential liability for those damages.

For one, given the language of Article 17, plaintiff could potentially recover for emotional distress but only distress "suffered due to the … bodily injury," not "for all mental and emotional distress, no matter how unrelated to the bodily injury." ECF Doc. 214 at pp.2-3.

By the time of trial, the Court had also held that immunity under 49 U.S.C. § 44941(a) ("ATSA") "does, and was intended to, apply to cases under the Montreal Convention" (ECF Doc. 214 at pp.2-3), "that § 44941(a) applies to all of the claims" (*id.* at p.5), and that the language and purpose of § 44941(a) support the application of broad immunity" (*id.* at p.6). As the Court explained, "[i]mplicit in immunity for making reports to law enforcement is immunity from liability for whatever law enforcement might do with those reports. Otherwise, immunity would be largely meaningless."[1] *Id.* Although § 44941(b) provides an "exception to immunity" the Court found that "Plaintiff has no evidence of actual knowledge or reckless disregard as to the truth or falsity of the reports made by Defendant," and as such, the exception to immunity "does not apply." *Id.*

---

[1] The Court correctly pointed to the "purpose of § 44941(a) [which] is to encourage reports to law enforcement" and observed that "[t]hat purpose would clearly be undercut if airlines and airline personnel would be potentially liable for the independent actions of law enforcement after a report was made." *Id.*

2

In its Updated Memorandum of Contentions of Fact and Law filed shortly before trial, Delta explained that its "legal immunity for reports to law enforcement and for actions taken by law enforcement in response commenced at the point that Ms. Rodemoyer reported to the pilots regarding plaintiff's suspicious conduct and a perceived threat to safety, and the pilots reminded her of the presence of a law enforcement officer, Special Agent Vahe, aboard the flight. At the latest, ATSA immunity was triggered when Ms. Rodemoyer engaged Special Agent Vahe to address the problems with plaintiff." ECF Doc. 259 at p.6.

As of the second day of trial, October 13, 2021, at least two issues relating to ATSA immunity remained unresolved: (1) when, if at all, was immunity under ATSA triggered and (2) if triggered, what bodily injury, if any, did plaintiff sustain prior to the trigger.

### B. Jury Deliberations

The next day, October 14, 2021, the jury was instructed, the case was submitted, and the jury retired to deliberate at approximately 11:00 a.m. ECF Doc. 289. In two jury notes dated October 15, 2021, at 9:55 a.m. (ECF Docs. 293-294), jurors requested the "legal definition of 'negligence'" though it was specifically defined in Instruction No. 4 (ECF Doc. 291 at p.5); the "definition of 'suspicious transaction'" (ECF Doc. 293); and testimony from Ms. Rodemoyer, the plaintiff (*id.*), and Ms. Cook (ECF Doc. 294) on certain issues.

The Court responded to these inquires. The jury was told "[t]he legal definition of negligence is contained in Instruction Number 4 and you are referred to that instruction." ECF Doc. 297. Regarding ATSA's use of the phrase "suspicious transaction," the jury was advised to consider "the ordinary meaning of the words." ECF Doc. 298. And the following response was provided with respect to the remaining questions: "the Court will not read or interpret testimony in response to these requests." ECF Doc. 299.

3

Defendant Delta Air Lines, Inc.'s Brief Re Entry of Judgment in Accordance With Evidence-Supported Verdict
Case No: 5:17-cv-1065 DSF AS

### C. The Consistent, Evidence-Supported Verdict

In a jury note dated October 15, 2021, at 1:50 p.m., the jury advised the Court it had reached a unanimous verdict. ECF Doc. 295.

By answering "yes" to question 1, the eight jurors concluded that ATSA immunity was triggered when Joy Rodemoyer voluntarily reported a suspicious transaction relevant to a possible violation of law or regulation relating to a threat to aircraft or passenger safety, or terrorism, and engaged Special Agent Vahe's assistance. ECF Doc. 300 at p.2.

Following the instructions on the verdict form, and having answered "yes" to question 1, the jury answered question 2. *Id.* With its answer, "yes," the jury went on to find that "[p]rior to Special Agent Vahe's arrival at the back of the airplane, . . . Mr. Bandary sustain[ed] a bodily injury that was caused by the conduct of Delta Air Lines[.]" *Id.*

Continuing in accordance with the instructions on the verdict form, and having answered "yes" to question 2, the jury proceeded to question 3. *Id.* Answering "yes" to question 3, the jury concluded that "[p]rior to Special Agent Vahe's arrival at the back of the airplane, . . Mr. Bandary [did] suffer emotional distress that was caused by a bodily injury[.]" *Id.*

As instructed in the verdict form, because its answer to question 3 was "yes," the jury answered questions 4a and 4b. *Id.* The jury responded to question 4a ("the amount of Mr. Bandary's [bodily injury] damages prior to Special Agent Vahe's arrival at the back of the airplane") by writing the number, "$8,000$^{00}$". *Id.* The figure provided in response to question 4b ("Emotional distress caused by bodily injury" "prior to Special Agent Vahe's arrival at the back of the airplane") was "$4,000$^{00}$". *Id.* Based on these figures, the jury correctly added the numbers and arrived at "$12,000$^{00}$" as the total damages sustained by plaintiff prior to Special Agent Vahe's

4

arrival at the back of the airplane (*id.*), and, in accordance with the answer to question 1, prior to the time when Delta's immunity under ATSA was triggered.

Because the "answer to question 3 included total damages greater than 0,"[2] the jury answered question number 8 as instructed. There, the jury answered "yes" to the question "[w]ere the damages listed in paragraphs 4 or 7 contributed to by Mr. Bandary's negligence or wrongful act or omission, if any?" *Id.* at p.3. From question 8 and in accordance with the instructions on the verdict form, the jury then answered question 9. "Expressed as a percentage between 1 and 100," the jury found that the extent to which "Mr. Bandary's negligence or wrongful act or omission cause[d] or contribute[d] to his injuries" was 15%. *Id.* at p.4.

These responses are all entirely consistent. They are also supported by the overwhelming weight of the evidence, such as the only evidence regarding a bodily injury sustained prior to Special Agent Vahe's engagement (and therefore the commencement of Delta's immunity under ATSA), was plaintiff's testimony that he fell on his buttocks in the back galley.[3] RT (10/12/2021) at 34:23-37:24. While it is possible to sustain a bodily injury in a fall, the fall itself is not a bodily injury and plaintiff did not testify that he was injured in the fall. *Id.* Nor is there evidence that Delta caused plaintiff's fall or that the damages figures are founded on anything other than speculation, guesswork and conjecture – the very things upon which a

---

[2] The reference to question 3 was a typographical error. This was apparent because question 3 was a question to be answered "yes" or "no" not with a damages figure as in question 4 to which the directions should have referred. That the reference was meant to refer to question 4 is further confirmed by the mention of question 4 in question 8.

[3] Plaintiff testified that "I fell on my bottom, on my bottom, I fell down. I landed on my bottom." While he didn't know how long he was on the floor, he estimated it was "several minutes." He testified that there were four flight attendants and four passengers there at the time, and that it somehow interfered with his sense of "freedom" in immigrating to the United States many years earlier. What he never said was that he was in any way physically injured in the alleged fall. RT (10/12/2021) at 34:23-37:24.

5

Defendant Delta Air Lines, Inc.'s Brief Re Entry of Judgment in Accordance With Evidence-Supported Verdict
Case No: 5:17-cv-1065 DSF AS

damage award must not be based. *See* Jury Instruction No. 15 (ECF Doc. 291 at p.17). Delta also disputes the small percentage the jury assigned to plaintiff's own negligence or other wrongful acts or omissions, but to be sure that does nothing to invalidate the otherwise valid, fully consistent verdict form initially completed by the jury.

As discussed below, the verdict is in no way infirm because the jury also answered questions that required no response.

### D. The Inexplicable, Inconsistent, and Unfounded Second "Verdict"

Because the jury answered questions 5 through 7 instead of following the verdict form instructions and with the typographical error in the instructions that followed question 4, the jury was given a corrected verdict form. They were told that the "Court has found that there is an error in the verdict form that the Court provided. Please read this revised verdict form carefully." ECF Doc. 303.

Out of the presence of the jury, Delta explained that "the record should reflect that the defense disagrees that and objects to the jury revisiting or redetermining or deciding Questions 1 through 4. The error occurs – the error in the form, the verdict form, is – there's no dispute that there was an error. That error has been corrected. But it should not allow the jury to now revisit Questions 1 through 4. They should only be following the error, whatever they want to revisit, because as we've indicated before – I don't know if it was [on] the record – but it's – once they find the immunity, it is irrelevant what damages or injuries were suffered." Reporter's Transcript ("RT") (10/15/2021) at 17:7-18.[4]

In response, the Court said the following: "Let me interrupt you. I was thinking about that back in chambers. I think that's right. I think there was obviously a mistake in the verdict form." However, "[t]hey did follow the instructions. There's

---

[4] Pages from the reporter's transcripts cited in this brief are attached to the accompanying Declaration of Richard G. Grotch.

6

Defendant Delta Air Lines, Inc.'s Brief Re Entry of Judgment in Accordance With Evidence-Supported Verdict
Case No: 5:17-cv-1065 DSF AS

nothing wrong with what they did. It's not inconsistent. It can be explained and I think the thing to do is to tell them to come back in. We don't need them to fill out a new verdict form." *Id.* at 17:19-18:1. The Court rightly added: "They answered the questions. There's nothing about it that would suggest that the answers to 1 through 4 should now be different." *Id.* at 18:16-18. The Court explained that in the event the jury returned with a verdict with different answers to the first four questions, the Court "would simply enter judgment based [on] the original verdict form and then you could both talk to the Ninth Circuit." *Id.* at 19:14-20.

Having found no need for the jury to complete a new verdict form given that the first one was consistent (even if it contained surplusage), the Court planned for the courtroom deputy to tell the jury, at 3:30 p.m., to return to the courtroom. *Id.* at 22:20-21. Literally as plaintiff's objection to discharging the jury was overruled at 3:30 p.m., the Court explained, "[w]ell, the jury says they have a verdict so we'll take it." *Id.* at 23:6-19.

After spending less than 40 minutes with the second verdict form, having heard no new evidence, and receiving no new instructions, the jury that had unanimously concluded, following about a full day of deliberation, that the report to Special Agent Vahe triggered ATSA immunity, somehow reversed itself. ECF Doc. 302 at p.2. This time, the jury disregarded the instructions that followed question 1 and answered question 2. *Id.* And based on the answer to question 2, the jury was instructed to answer question 3. *Id.* But the jury ignored that instruction too. As a result, questions 3 and 4 (if applicable) were left unanswered. *Id.*

The jury then answered questions 5 and 6, and in response to question 7, provided damages figures that bore no relation to those provided in the consistent, evidence-supported verdict – much less to the evidence or reality. *Id.* at p.3. This time, plaintiff's bodily injury damages were said to be "$2.5 million" and the jury conjured his damages for emotional distress caused by the bodily injury were "$6

7

million," for a total of "$8.5 million." *Id.* In answer to questions 8 and 9, the jury assessed plaintiff's own negligence or other wrongful acts or omissions that contributed to his damages at the level of 15%. *Id.* at pp.3-4.

The Court was correct when it characterized the aberrant second verdict form as "totally of no use" (RT (10-15-2021) at 28:4-6), "totally inexplicable" (*id.* at 29:12-13), and "just ludicrous" (*id.* at 28:14-15). All that is true.

### III. LEGAL ARGUMENT

#### A. The Jury's Initial, Consistent, Evidence-Based Verdict Must be Respected

Fortunately, resolution of the issues now before the Court are informed – indeed compelled – by apposite, binding, Ninth Circuit precedent. It is clear the Court must enter judgment based on the original, fully consistent verdict form.

In *Floyd v. Laws*, 929 F.2d 1390, 1397 (9th Cir. 1991), the Ninth Circuit confronted a situation where the jurors rendered seemingly inconsistent verdicts. One inconsistency involved two questions on liability and damages. *Id.* at 1394-1400. Question 13 read: "Was plaintiff [] damaged as a result of any of the actions of defendant[?]" and the jurors answered, "no." *Id.* at 1392-93. The verdict form then instructed "If your answer to question 13 is 'No,' do not answer any further questions, but proceed to the end of this form and sign the verdict. If you answered "Yes" to question 13, proceed to question 14. *Id.* at 1393. Question 14 read: "What amount of money will reasonably compensate plaintiff [] for any of the actions of defendant[?]" Again, in contravention of the instructions on the form, the jury responded: "$7,500.00." *Id.*

The district court disregarded the $7,500 award, and the Ninth Circuit affirmed. The court of appeals concluded that under *Gallick v. B & O R.R.*, 372 U.S. 108, 119, 83 S. Ct. 659, 666 (1963), the district court was duty bound to harmonize any inconsistencies and should not award a new trial unless the court determined an

inconsistency was "fatal."[5] But, the Ninth Circuit court found no inconsistency since the jury was not supposed to answer question 14 – rendering the answer to the question surplusage. *Id.* at 1398-1400.

In support of its holding, the Ninth Circuit relied on the logic of an earlier Ninth Circuit case that held that a trial court must ignore parenthetical comments on a verdict form as surplusage (see *Tanno v. S.S. President Madison Ves*, 830 F.2d 991, 993 (9th Cir. 1987)), as well as persuasive authority from the Fifth Circuit that held a trial court must ignore subsequent answers, given in violation of instructions, as surplusage (*White v. Grinfas*, 809 F.2d 1157, 1161 (5th Cir. 1987)).

The Ninth Circuit held that when the jury "violate[s] the district court's express written instructions contained on the special verdict form itself[,]" the trial court is "bound by law to disregard any [improvidently supplied] answer as surplusage." *Id.* at 1398-1399. That is precisely what the Court should do in this case. It is beyond dispute that considering the jury's responses to questions 1 through 4, the responses to questions 5, 6, and 7 were provided in contravention of the Court's instructions. Under *Floyd*, the Court is legally bound to disregard those answers as surplusage. Consistent with the holding in *Floyd* and the spirit of *Gallick*, the award of $1,500,000 (prior to a reduction of 15%) never became a part of the special verdict. There is no inconsistency in the special verdict and the verdict should serve as the basis for a judgment in favor of plaintiff and against Delta in the amount of 85% of $12,000, or $10,200.

///

///

---

[5] In *Gallick*, the Court held that "it is the duty of the courts to attempt to harmonize the answers, if it is possible under a fair reading of them: 'Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way.'" The Court must attempt to reconcile the jury's findings, by exegesis, if necessary, before it is free to disregard the jury's special verdict and remand the case for a new trial. *Id.* at 119.

9

Defendant Delta Air Lines, Inc.'s Brief Re Entry of Judgment in Accordance With Evidence-Supported Verdict
Case No: 5:17-cv-1065 DSF AS

    Cleaving to *Floyd*, courts since have repeatedly disregarded as surplusage answers on a verdict form proffered in response to questions the jury never should have reached had the court's instructions been followed. For example, in *Franks v. Kirk*, 804 F. App'x 610 (9th Cir. 2020) (unpub. disp.), a Section 1983 action, the court of appeals held that "the district court properly disregarded the jury's answers to Questions 2 through 6 on the special verdict form as surplusage" and that the court did not abuse its discretion in denying plaintiff's motion for a new trial "because the jury's verdict was not contrary to the clear weight of the evidence." *Id.* at 611.

    Similarly, in *Estate of Casillas v. City of Fresno*, No. 1:16-CV-1042 AWI-SAB, 2019 U.S. Dist. LEXIS 111722, at *56-58 (E.D. Cal. July 2, 2019), a jury returned a verdict in favor of plaintiffs on claims of Fourth Amendment excessive force, battery, and negligence. Defendants filed a motion for new trial and for a directed verdict. Among other things, they contended that the negligence verdict was inconsistent. With respect to the negligence claim, the jury found the police officer was both negligent and a substantial factor in causing the decedent's death. The jury also determined the decedent was negligent, but that his negligence was not a contributing cause of his death. The jury then apportioned fault, in contravention of the instructions on the verdict form – 60% for the officer and 40% for the decedent.

    With respect to the negligence claim, defendants argued the jury returned an inconsistent verdict which required a new trial. They pointed to the fact that, despite the clear instructions on the verdict form to ignore the comparative-negligence-apportionment question, the jury nevertheless apportioned 40% fault to the decedent and 60% to the officer – even though the jury also found the decedent was not a substantial cause of his own death.

    In *Estate of Casillas*, as in *Floyd*, the Court found the jury's response to the apportionment of fault question (Question 8) was surplusage. The Court "was 'bound to disregard' the jury's answer to Question 8 under *Floyd*, as damages can only be

10

apportioned under California law where the victim's negligence caused his injuries. The Court therefore denied the defendants' motion for a new trial on the issue of the jury's apportionment of negligence.

Since this Court correctly concluded that the original verdict form is "not inconsistent" and "can be explained" (RT (10/15/2021 at 17:22-25) and given that the jury did not follow the Court's instructions on how to proceed through the verdict form, the information provided in response to questions 5, 6, and 7 is superfluous – or to use the Ninth Circuit's term, surplusage.

There can be no dispute that it is the Court's duty "to attempt to harmonize the answers, if it is possible under a fair reading of them." *Gallick,* 372 U.S. at 119. The initial verdict form reflects no disharmony at all in the answers the jury provided. There is only additional, unnecessary and immaterial information that must be disregarded. With that extraneous information disregarded, judgment should be entered consistent with the answers to questions 1-4 and 8-9 of the verdict form.

### B. The Jury's Second, Inexplicable Verdict Must be Rejected

Whereas the initial verdict form is fully consistent, the second is anything but concordant – or coherent. Given the jury's purported reversal on question 1, to answer it "no," the answer to question 2 violates the verdict form instructions and makes no sense. And given the answer to question 2, the refusal to answer questions 3 and 4 is incomprehensible. It is equally if not more inexplicable why the numbers originally given in response to questions 7a and 7b ballooned to proportions that bear no relation to, and find absolutely no support in, the evidence.

The initial verdict is evidence-supported and coherent. By contrast, the second verdict truly is, in the Court's words, "just ludicrous," "of no use," and "inexplicable." The former is harmonious, the latter, cacophony. Under the law, the initial verdict should serve as the basis for the judgment while the latter should be disregarded in its entirety.

### C. There is Neither a Legal Basis nor a Necessity for a New Trial

Rule 59 of the Federal Rules of Civil Procedure does not identify specific grounds for a new trial, but a court is bound to grant a new trial for "grounds that have been historically recognized." *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003).

A court may grant a motion for a new trial due to a jury's inconsistent verdict. *See, e.g.*, *Floyd*, 929 F.2d at 1396. But since "'a court has a duty under the seventh amendment to harmonize' a jury's 'seemingly inconsistent answers' if a fair reading allows for it" (*White v. Ford Motor Co.*, 312 F.3d 998, 1005 (9th Cir. 2002) (quoting *Floyd*, 929 F.2d at 1396), "'the jury verdict must be upheld unless it is impossible to harmonize the answers under a fair reading,' though we will not save the general verdict if that would 'require us to torture a fair reading.'" *White*, 312 F.3d at 1005 (quoting *Los Angeles Nut House v. Holiday Hardware Corp.*, 825 F.2d 1351, 1354 (9th Cir. 1987)).

Even "[i]n an inconsistent verdict case, a court asks, not whether the verdict necessarily makes sense under any reading, but whether it can be read in light of the evidence to make sense." *White*, 312 F.3d at 1005.

As discussed above, the initial verdict is consistent; it can and should be accepted as the basis for entry of judgment in this case. Even if it were inconsistent – and it is not – a fair reading of that verdict allows the answers to be reconciled and harmonized just as the seventh amendment requires. Surely the verdict can be fairly read in light of the evidence to make sense.

Because of this, and as "the district court may order a new trial only if it finds that the jury's verdict was 'clearly contrary to the weight of the evidence'" (*Roy v. Volkswagen of Am., Inc.*, 896 F.2d 1174, 1179 (9th Cir. 1990) (internal citations omitted)), and since this is not such a case, there is no basis upon which to disturb the jury's initial verdict and instead order a new trial.

12

Defendant Delta Air Lines, Inc.'s Brief Re Entry of Judgment in Accordance With Evidence-Supported Verdict
Case No: 5:17-cv-1065 DSF AS

### D. The Initial Verdict Form is Consistent With the Weight of the Evidence and Should Serve as the Basis for the Judgment

At trial, the evidence established that the lead flight attendant, Joy Rodemoyer, reported concerns about Mr. Bandary's suspicious activities to the captain. In turn, at the captain's urging, Ms. Rodemoyer requested assistance from a law enforcement officer, Special Agent Nicholas Vahe, who was aboard the flight.

When Congress enacted ATSA just weeks after September 11, 2001, it intended to encourage airlines and their employees to make such reports of suspicious activity to law enforcement. The purpose of the immunity afforded by ATSA was to encourage airline employees "not [to] hesitate" in making such reports. *Air Wisconsin Airlines Corp. v. Hoeper*, 571 U.S. 237, 248-249, 134 S. Ct. 852, 862 (2014). Reflecting a change from the pre-9/11 policy, ATSA shifted from airlines to law enforcement "the responsibility for assessing and investigating possible threats to airline security." *Id.* (citation and internal quotation marks omitted). Airlines and their employees are supposed to report whenever "in doubt" and then leave any assessment and follow up to law enforcement. *Id.* at 257. That is what the evidence showed Ms. Rodemoyer did and the jury's answer to the first question on the first verdict form (ECF Doc. 300 at p.2) is therefore fully supported by the record.

Plaintiff denied doing anything on the flight that he subjectively regarded as suspicious or unusual. Yet he admitted that he walked around the airplane – "a lot." RT (10/12/2021) at 28:16-18. Plaintiff was undeniably in and out of different lavatories throughout the flight, though he could not recall how many times. *Id.* at 28:6-15. Plaintiff felt he was being watched by flight attendants and by a JetBlue pilot who was a fellow passenger. *Id.* at 29:16-20. Plaintiff acknowledged there were *passengers* aboard who were afraid of him because *they* thought he was a terrorist. RT (10/13/2021) at 11:4-7. And there was testimony that passengers brought their

13

concerns about plaintiff to the attention of the flight attendants.[6] RT (10/13/2021 (a.m.) 14:17-19, 19:20-20:9. Though he denied it at the time he did it, at trial he had to admit he photographed two flight attendants because "they were just standing there, staring at me" (though Ms. Falten plainly is not) and because he "was intending to go to a supervisor for them or down in the airport and complain about them."[7] RT (10/12/2021) at 30:23-32:3.

Viewing this limited, undisputed testimony through the prism of the Government's "when in doubt, report" policy – one that is given voice through 49 U.S.C. § 44941(a) – it was well within Ms. Rodemoyer's purview to report plaintiff's conduct to the captain and then to the onboard law enforcement officer. That is, after all, precisely what Congress sought to encourage by immunizing airlines and airline employees under ATSA.

Thus, when the jury answered "yes" to the question whether, by engaging Special Agent Vahe's assistance, . . . Delta Air Lines ma[d]e a voluntary disclosure of any suspicious transaction relevant to a possible violation of law or regulation relating to a threat to aircraft or passenger safety or terrorism" (ECF Doc. 300 at p.2), it did so with the benefit of the weight of the evidence to support that answer. (By contrast, when the jury answered "no" to the same question, that answer clearly was contrary to the weight of the evidence.)

---

[6] Ms. Rodemoyer testified that "[o]ther passengers had been going to the aft flight attendant crew explaining that they were becoming nervous. They had also observed this behavior [of plaintiff]." RT (10/13/2021 (a.m.) 14:17-19. Two flight attendants advised Ms. Rodemoyer "[t]hat passengers had been complaining to them about Mr. Atef Bandary's behavior." *Id*. at 19:20-20:9.

[7] While plaintiff tried to tell the jury that he took the picture so he could complain about the flight attendants he photographed, that makes no sense. To that point in time, plaintiff had no contact with either of the two flight attendants who appear in his picture. They were working on the aisle opposite of his seat. Other than identifying her as one of the two subjects in his photo, plaintiff offered no testimony regarding Ms. Falten.

14

Defendant Delta Air Lines, Inc.'s Brief Re Entry of Judgment in Accordance With Evidence-Supported Verdict
Case No: 5:17-cv-1065 DSF AS

The verdict form's second question asked this: "Prior to Special Agent Vahe's arrival at the back of the airplane, did Mr. Bandary sustain a bodily injury that was caused by the conduct of Delta Air Lines?" *Id.* There was no evidence that plaintiff sustained a bodily injury during the period relevant to that question, though there was controverted evidence that plaintiff fell on his buttocks in the galley.[8] In the absence of evidence of any bodily injury, it is conceivable the jury inferred he was somehow injured by the fall. And for that "bodily injury" about which there was no actual evidence, the jury awarded $8,000. *Id.* If plaintiff sustained a bodily injury falling on his butt, there was still less proof that he suffered any emotional distress caused by the unidentified bodily injury, much less that the damages were $4,000.

As discussed above, the responses to questions 5 through 7 are surplusage. If they had any substantive meaning at all, they would represent damages for which Delta is not legally liable as a matter of law given the jury's answer to question 1 and the immunity afforded by ATSA as a matter of law.

Again, the jury's conclusion that the extent of plaintiff's negligence or other wrongful acts or omissions were only 15%, seems at odds with the credible evidence, but not so "clearly contrary to the weight of the evidence" as to warrant a new trial.

## IV.   CONCLUSION

The jury's initial verdict form (ECF Doc. 300) is consistent, harmonious, and evidence supported. Consistent with the overwhelming weight of the evidence, the jury answered yes, Delta voluntarily reported a suspicious transaction to Special Agent Vahe. The jury also determined Plaintiff suffered $12,000 in damages prior to the report to Special Agent Vahe. The Court should therefore enter judgment in favor of plaintiff and against Delta with total damages in the amount of $10,200,

---

[8] Delta agrees with the Court's repeated expressions of doubt about whether "falling on your butt" is an injury. This issue arose during the final pretrial conference on September 13, 2021, and again towards the end of the trial (RT (10/15/2021) at 19:6-9.

representing the $12,000 for which Delta is liable under the verdict and the law, reduced by 15% in accordance with the verdict and Delta's exoneration defense under Article 20 of the Montreal Convention. The superfluous answers provided by the jury to questions 5 through 7 of verdict form 1 and the entirety of verdict form 2 should be disregarded.

    There is simply no reason in law or equity for a new trial in this nearly four-and-a-half-year-old case that arises out of a flight taken more than six years ago.

Dated: October 22, 2021        Respectfully submitted,

                THE RYAN LAW GROUP

                /s/ Timothy J. Ryan

By:_____
      Timothy J. Ryan

-and-

JETSTREAM LEGAL APC

    Richard G. Grotch

    Attorneys for Defendant
    Delta Air Lines, Inc.