UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ATEF BANDARY,<br>    Plaintiff,<br><br>        v.<br><br>DELTA AIR LINES, INC.,<br>    Defendant. | EDCV 17-1065 DSF (ASx)<br><br>Order re Judgment on Verdict Form or Mistrial (Dkts. 311, 321, 322) |

    Following a jury trial over Plaintiff Atef Bandary's alleged injuries suffered on a flight operated by Defendant Delta Air Lines, Inc., the Court instructed the parties to submit briefs concerning the two verdict forms returned by the jury. See Dkt. 290. Both parties agree that a mistrial or new trial is not warranted under the circumstances. See Dkts. 311 (Delta's Brief) at 12 ("[T]here is no basis upon which to disturb the jury's initial verdict and instead order a new trial."), 321 (Bandary's Brief) at 16 ("Mr. Bandary and Delta agree that there is no cause for a mistrial or new trial here."). Delta argues the initial verdict form should be entered. See Delta's Brief at 4-6; see also Dkt. 300 (First Verdict Form). Bandary argues the second verdict form should be entered. See Bandary's Brief at 6, 9-12; see also Dkt. 302 (Second Verdict Form).

    For the reasons stated below, the Court finds judgment should be entered on the Second Verdict Form.

## I. BACKGROUND

    Bandary sued Delta for harms allegedly suffered on a flight between Atlanta, Georgia and Salt Lake City, Utah. Following a four-day trial, the jury returned its verdict on October 15, 2021. After reading the verdict and polling the jury, the Court asked the parties whether the jury could be excused. Dkt. 315 (Day 4 Tr.) 7:5-6. Counsel for Bandary objected to excusing the jury and the Court held a sidebar

to discuss the issue. Id. 7:7-8. During the sidebar, the parties discovered problems with the First Verdict Form. See id. at 7-10. The directions at the end of question 4 of the First Verdict Form erroneously stated: "If your answer to question 3 included total damages greater than 0, proceed to answer question number 8." First Verdict Form at 2. The directions then stated: "If your answer to question 4 was 0, stop here, answer no further questions." Id. Question 4 included an assignment of damages, but question 3 was a "yes" or "no" question. Id. In addition, because the answer to question 4 was not 0, the direction to "stop here, answer no further questions" was confusing. The jury reasonably proceeded to answer the remaining questions. Id. at 2-3.[1] Questions 5-7 related to damages "at any time" during the flight.

During the sidebar, the parties agreed that a corrected verdict form should be given to the jury. See Day 4 Tr. 10:6-7, 10:13-14, 13:20-22, 15:12-18. Delta objected to permitting the jury to revisit or redecide questions 1 through 4. Id. 17:6-18. Once the error after question 4 was corrected, the Court issued a Second Verdict Form to the jury with a note agreed upon by the parties stating, "The Court has found that there is an error in the verdict form that the Court provided. Please read this revised form carefully." See Second Verdict Form at 2; Dkt. 303 (Court's Supplementary Instruction).

After approximately forty minutes, the jury returned a Second Verdict Form that differed from the First Verdict Form in several respects. First, the jury changed its answer to question 1 from "yes" to "no." First Verdict Form at 2; Second Verdict Form at 2. Question 1 asked, "By engaging Special Agent Vahe's assistance, did Delta Air Lines make a voluntary disclosure of any suspicious transaction

---

[1] Delta suggests that "the jury answered questions 5 through 7 instead of following the verdict form instructions," Delta's Brief at 6, but that is not entirely correct. At best, the jury was given confusing and contradictory directions in the same paragraph. Cases in which the jury ignores instructions or has been released before an error is identified are not controlling here.

2

relevant to a possible violation of law or regulation relating to a threat to aircraft or passenger safety, or terrorism." Id. Second, the jury increased Bandary's damages to $2.5 million for bodily injury and $6 million in emotional distress caused by bodily injury for a total of $8.5 million. Compare Second Verdict Form at 2 (awarding $8.5 million in damages) with First Verdict Form at 2 (awarding $8,000 for bodily injury and $4,000 for emotional distress caused by bodily injury for injuries sustained prior to Vahe's assistance and $500,000 in damages for bodily injury and $1 million for emotional distress caused by bodily injury after Vahe was engaged).[2]

Given the differences between the First Verdict Form and the Second Verdict Form, the Court ordered the parties to brief whether the Court should grant a mistrial or whether judgment should be entered on one of the verdict forms. See Dkt. 290.

## II. LEGAL STANDARD

After a jury trial, Federal Rule of Procedure 59 permits the Court to "grant a new trial on all or some of the issues . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court."[3] Though Rule 59 does not enumerate grounds on which a court may order a new trial, when deciding whether to grant a new trial, courts are "bound by those grounds that have been historically recognized." Zhang v. Am. Gem Seafoods, Inc., 339 F.3d 1020, 1035 (9th Cir. 2003). "The trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." Molski v. M.J. Cable, Inc., 481 F.3d 724 (9th Cir. 2007) (quoting Passantino v. Johnson & Johnson Consumer Prods., Inc., 212 F.3d 493, 510 n.15 (9th Cir. 2000) (simplified). "A trial court is rarely entitled to

---

[2] Though the jury did not need to answer question 2 based on its answer to question 1, the jury answered "yes" to question 2. See Second Verdict Form at 2; see also Day 4 Tr. 24:10-16.

[3] Neither party has requested a new trial, but both parties cite to the Rule 59 standard and the cases they cite involve requests for a new trial.

disregard jury verdicts that are supported by substantial evidence. The Supreme Court has held that a trial court has a duty to harmonize seemingly inconsistent answers." Duk v. MGM Grand Hotel, Inc., 320 F.3d 1052, 1058 (9th Cir. 2003).

Before a court may order a new trial, the court must "do all [it] can to reconcile" the answers and "when the very body that issued the ambiguous or inconsistent verdict is still available to clarify its meaning, a request that it do so comports with common sense as well as efficiency and fairness." Larson v. Neimi, 9 F.3d 1397, 1402 (9th Cir. 1993), superseded by rule as stated in C.B. v. City of Sonora, 769 F.3d 1005 (9th Cir. 2014); see also Mateyko v. Felix, 924 F.2d 824, 826-27 (9th Cir. 1990) (trial court did not abuse its discretion in resubmitting an inconsistent or ambiguous special verdict to the jury for clarification). Therefore, where the jury has not yet been discharged, the trial court has discretion to resubmit the verdict "to the jury for clarification." Duk, 320 F.3d at 1056.

## III. DISCUSSION

The issue presently before the Court is whether a mistrial is warranted for the inconsistent verdict forms and if a mistrial is not warranted, whether the Court should enter judgment on the First or Second Verdict Form.

As an initial matter, both parties agree that a mistrial is not warranted. See Delta's Brief at 12, 15; Bandary's Brief. at 16 ("Mr. Bandary and Delta agree that there is no cause for a mistrial or new trial."); see also Day 4 Tr. 28:22-29:2 (Delta indicating that it does not believe a mistrial is warranted under the circumstances). The Court agrees. For the reasons stated below, the Court finds judgment should be entered on the Second Verdict Form.

### A. The Court Properly Resubmitted the Verdict Form to the Jury

As discussed above, with respect to the First Verdict Form, the instructions provided to the jury were confusing at best. The parties do

not dispute that they agreed to fix the typographical error after question 4 and agreed that the Court should send a note to the jury informing it that there was an error and instructing it to "read t[he] revised verdict form carefully." Day 4 Tr. 15:21-16:2, 16:8-20; see also Court's Supplementary Instruction.

Delta argues the Court should enter judgment on the First Verdict Form because the First Verdict Form is "internally consistent and supported by the evidence." Delta's Brief at 1. Delta contends that "[w]hereas the initial verdict form is fully consistent, the second is anything but concordant – or coherent." Id. at 11. That is, Delta argues the Court should not enter judgment on the Second Verdict Form because (1) "the jury's purported reversal on question 1 . . . makes no sense"; (2) "the answer to question 2 violates the verdict form instructions and makes no sense," (3) given that the jury answered question 2, "the refusal to answer questions 3 and 4 is incomprehensible," and (4) "[i]t is equally if not more inexplicable why the numbers originally given in response to questions 7a and 7b ballooned to proportions that bear no relation to, and find absolutely no support in, the evidence." Id.

Bandary argues that judgment should be entered on the Second Verdict Form because (1) the First Verdict Form is "irreconcilably inconsistent," with respect to the jury's answers to questions 1, 8, and 9; (2) the typographical error after question 4 likely created ambiguity as to question 1; and (3) the Second Verdict Form is "internally consistent." Bandary's Brief at 4-5, 7, 10-11.

Delta principally relies on Floyd v. Laws, 929 F.2d 1390 (9th Cir. 1991) for the proposition that when the jury answers questions in violation of the court's instructions, the court does not abuse its discretion by ignoring the answers. See Delta's Brief at 8-10 (citing Floyd, 929 F.2d at 1397-1400). However, Floyd is distinguishable.

In Floyd, *after the jury was discharged*, counsel for the defendants pointed out that the jury's answers to two questions "were apparently inconsistent with each other." Floyd, 929 F.2d at 1392

(emphasis added). The first question at issue asked whether the plaintiff was damaged by the defendants' actions, to which the jury answered "no." Id. The verdict form then instructed the jury that if its answer to the question was no, it should "not answer any further questions, but proceed to the end of this form and sign the verdict." Id. at 1393. In direct contravention of the court's instruction, the jury went on to answer the next question, which instructed it to award an amount in damages. Id. The circuit noted that as a "general proposition . . . the trial court should defer only to legitimate or viable findings of fact" and "special findings in violation of the trial court's express instructions do not constitute legitimate or viable findings of fact," and the court should "therefore dismiss them as surplusage." Id. at 1398. The circuit then held that, assuming the jury answered the first question correctly, as it must do under binding precedent, the answer to the first question "disposed of the legal issue before the trial court and obviated the need for further finding of fact," and therefore, after the answer to the first question, "the trial court was bound by law to disregard any answer to question 14 as surplusage." Id. at 1399-1400. As a result, the damages awarded in question 14 "never became a part of the special verdict, and the trial court was faced with no apparent inconsistency in the special verdict." Id. at 1400.

Here, Bandary objected to excusing the jury because of the typographical error after question 4 and juror confusion about whether it was supposed to answer questions 5 through 7. See Day 4 Tr. 7:5-8, 18-19, 8:6-8. The parties agreed the First Verdict Form should be corrected and sent back to the jury with instructions to read the Second Verdict Form "carefully." See id. 15:21-16:2, 16:8-20; see also Court's Supplementary Instruction.[4] In other words, in Floyd the court could

---

[4] Delta eventually objected to permitting the jury to revisit or redecide questions 1 through 4, Delta's Mot. at 6 (quoting Day 4 Tr. 17:7-18). However, Delta fails to cite any authority permitting the Court to send back the verdict form directing the jury to answer only certain questions. In any event, that the jury filled out every question on the First Verdict Form suggests the jury may have been confused. To rectify the mistake after question 4 and alleviate potential juror confusion, the Court resubmitted the

not resubmit the verdict form for clarification because the jury had been discharged, but here the Court could and did resubmit the verdict form. See Larson, 9 F.3d at 1402 ("[I]t makes a good deal of sense to require trial and appellate courts to do all they can to reconcile special verdict answers when the only alternative is ordering a new trial."). And rather than order a new trial – the only alternative – the court in Floyd reconciled the seemingly inconsistent verdict answers by ignoring the answers the jury was expressly instructed not to provide. Floyd, 929 F.2d at 1397-1400. Indeed, the circuit noted that Supreme Court precedent "does not expressly preclude the trial court from resubmitting the special verdict to the jury, provided the jurors have not been discharged," but that "resubmission was unavailable, because the jury had been discharged." Id. at 1396-97.

Unlike in Floyd, this jury did not blatantly ignore the directions on the form. See Floyd, 929 F.2d at 1393 ("[T]he jury disobeyed the express instructions on the verdict form and answered" the next questions). It followed one of two possible interpretations of the directions. Resubmitting an inconsistent or ambiguous verdict form *before* the jury is discharged is precisely the type of corrective action the Ninth Circuit relied on in Duk when it reinstated the jury's second verdict rather than the first. See Duk, 320 F.3d at 1056-58, 1061. In Duk, the court "squarely face[d] the applicability of Floyd's 'surplusage' rule where the jury is still available." Id. at 1057. "[T]he jury was instructed that if it found the plaintiff to be more than 50% negligent, it should 'sign and return [the] verdict' and judgment would be entered for the defendant." Id. at 1055. The jury determined the plaintiff was more than 50% negligent, but in contravention of the court's instructions, the jury answered the next question and awarded the plaintiff $3.3 million in damages. Id. The court reviewed the first verdict and "resubmitted the verdict form to the jury, informing the jury that the verdict contained an inconsistency" and instructed the

---

verdict form with instructions to review the Second Verdict Form "carefully." Delta did not object to resubmitting the verdict form, nor did Delta object to the Court's Supplementary Instruction.

jury to continue its deliberations. Id. After fifteen minutes of deliberation, the jury returned a second verdict, this time apportioning 51% of the fault to the defendant and 40% to the plaintiff. Id. The court recognized the second verdict was "flatly inconsistent with the first because it apportioned liability differently," but that the "discrepancy is easily explained by the process of redeliberation," which the court twice directed the jury to do. Id. at 1059-60. The circuit held the trial "court was within its discretion in resubmitting the first verdict." Id. at 1054. More importantly, the circuit determined the trial court had erred when it ordered a new trial on receipt of the second verdict and remanded with instructions to enter judgment on the second verdict. Id.

      The cases Duk relies on are instructive here. In Larson, a 42 U.S.C. § 1983 action based on the plaintiff's wrongful arrest, the jury returned a special verdict form in which it found the arresting officer had qualified immunity, but nonetheless awarded damages to the plaintiff. Larson, 9 F.3d at 1401. The court and the parties "recognized that there was an inconsistency in the verdict because if there were immunity, the jury did not need to (and could not) go forward and assess damages." Id. The trial court reasoned that based on the questions, the jury could have erred in "checking the 'yes' box" indicating the arresting officer had qualified immunity or it "could have meant that the jury thought it was to calculate damages even if there was immunity." Id. Because the jury had not yet been discharged, "the trial judge was able to resubmit the form." Id. After the jury returned from reviewing the verdict form, it had changed its answer to the qualified immunity question to "no," which "rendered the verdict consistent." Id.

      Here, Delta argues that the First Verdict Form is not inconsistent because the answers to questions 5 through 7 can be disregarded as surplusage. Delta's Brief at 15. Delta argues that if the answers to questions 5 through 7 in the First Verdict Form "had any substantive meaning at all, they would represent damages for which Delta is not legally liable as a matter of law given the jury's answer to question 1." Id. Therefore, just as in Larson, the jury's answers to

8

questions 5 through 7 were ambiguous and inconsistent because if the jury determined in question 1 that there has been a "suspicious transaction," – triggering Delta's immunity under the Aviation and Transportation Security Act, 49 U.S.C. § 44941 – the jury would not have been permitted to award damages for injuries caused after Agent Vahe was engaged. See First Verdict Form at 2, Second Verdict Form at 2; see also Day 4 Tr. 17:17-18 ("[O]nce [the jury] find[s] immunity, it is irrelevant what damages or injuries were suffered.").

Therefore, because it is possible the jury was confused or otherwise returned an inconsistent verdict, the Court properly resubmitted a corrected verdict form with instructions to review it "carefully." Delta does not argue that the jury (1) failed to follow the Court's Supplementary Instruction or (2) after reading the Second Verdict Form, carefully determined that the answer to question 1 was in fact "no." Indeed, during deliberation, the jury submitted a note requesting the definition of "suspicious transaction." Dkt. 293. As such, the jury clearly considered whether a "suspicious transaction" had occurred and it is entirely possible that in reviewing the Second Verdict Form "carefully," it determined that a "suspicious transaction" had not occurred.[5]

Because the jury completed the entire verdict form, it is possible the jury erred in the First Verdict Form by answering question 1 "yes." It is also possible the typographical error after question 4 caused confusion and the jury continued to complete the verdict form in an abundance of caution or because it thought it was required to do so. Either way, because the jury had not yet been discharged and because the parties agreed the verdict form should be resubmitted to the jury with a supplementary instruction, the Court properly resubmitted the

---

[5] Though the Court did not expressly instruct the jury to redeliberate, nothing in the Court's Supplementary Instruction prevented the jury from doing so, particularly in light of the Court's direction to read the Second Verdict Form "carefully." See Court's Supplementary Instruction.

9

verdict form to the jury with instructions to read the Second Verdict Form "carefully."

## B. The Second Verdict is Not a "Compromise" Verdict

While the jury's changed answer to question 1 and the changes in damages in question 7 are perhaps puzzling, the Court presumes the jury followed the subsequent instructions, reviewed the Second Verdict Form "carefully," and arrived at an agreed conclusion. See CSX Transp., Inc. v. Hensley, 556 U.S. 838, 941 (2009) ("[I]n all cases, juries are presumed to follow the court's instructions."). Analogizing to the circuit's conclusion in Duk, it appears the jury's changes in the Second Verdict Form have a simple explanation, namely, that the jury "read t[he] revised verdict form carefully," determined that a "suspicious transaction" had not occurred, and awarded damages accordingly. See Duk, 320 F.3d at 1059 (explaining that the "discrepancy" between the first and second verdict forms "is easily explained by the process of redeliberation.").

The Court is mindful that there is always a concern that the jury completes the verdict form with the intent to reach a "pre-determined destination" and revises its findings "to reach the damage award it desired" when the jury changes the verdict form as to liability and damages. Riley v. K Mart Corp., 864 F.2d 1049, 1054 (3d Cir. 1988); see also Duk, 320 F.3d at 1058 ("Resubmission, of course, leaves open the possibility that the jury will reach an improper 'compromise' verdict.") (citing Riley, 864 F.2d at 1054). However, as the Ninth Circuit instructed, "we presume that citizen jurors will properly perform the duties entrusted them and will not construe resubmission as an invitation to subvert the law and contort findings of fact in favor of a desired result." Duk, 320 F.3d at 1058. Beyond questioning how the jury arrived at its conclusions in the Second Verdict Form, Delta does not contend the jury revisited the Second Verdict Form with an eye towards a desired damages result. While the jury spent approximately forty minutes with the Second Verdict Form, the Court is unaware of any precedent mandating a certain amount of time spent on a second verdict form before returning the verdict. See id. at 1054-

55 (reversing and remanding with instructions to the trial judge to enter judgment on the second verdict form even after the jury spent "about twenty minutes" redeliberating). The Court declines to inquire into the intentions or thought process of the jury.

## IV. CONCLUSION

For the reasons set forth above, the judgment will be entered on the Second Verdict Form. Bandary is ordered to submit a proposed judgment within 10 days. Any objections must be submitted within 10 days of Bandary's submission.

IT IS SO ORDERED.

Date: November 30, 2021

Dale S. Fischer
United States District Judge

11